## WEBB *v.* FEATHER'S ESTATE.

1. TRIAL—EXAMINATION OF WITNESSES—LEADING QUESTIONS.
   The matter of permitting leading questions is entirely within the discretion of the trial court.

2. MARRIED WOMEN — SEPARATE ESTATE — PROMISSORY NOTE — EVIDENCE.
   Evidence that deceased, who owned the farm on which she lived with her husband, employed and paid the help, kept the accounts, and received the money for the products, is admissible in proceedings to charge the estate upon a note executed by her jointly with her husband for money borrowed.

3. SAME.
   A claimant against the estate of a married woman upon a note signed by her and her husband jointly may show that he told the husband, who negotiated the loan represented by the note, and who acted in all transactions as her agent, that he would not let him have the money, but would loan it to his wife.

4. SAME.
   There is not a total lack of evidence to show that money loaned, for which a married woman, since deceased, executed a note, was for the benefit of her separate estate, where the loan was negotiated by her husband, who acted as her general agent, and she was actively engaged in the conduct of a farm, handling the money, keeping accounts, and paying the help.

Error to Washtenaw; Kinne, J. Submitted January 26, 1899. Decided March 6, 1899.

Charles M. Webb presented a claim against the estate of Caroline Feather, deceased. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for claimant, defendant brings error. Affirmed.

*Frank E. Jones* (*Seth C. Randall*, of counsel), for appellant.

*M. J. Lehman* and *Arthur Brown*, for appellee.

Long, J. This appeal from the decision of the commissioners on claims was tried in the Washtenaw circuit court, where the claimant had judgment for the amount of the note in controversy. The note is for $250, signed by the deceased and her husband, Joseph Feather. The claim of the contestant is that the note was signed by the wife as surety for her husband; while the claimant contends that the note was for money going to the deceased for her separate estate. It appeared on the trial that the deceased had a farm of 72 acres, and that she and her husband owned jointly another farm of 80 acres some 2 miles distant. It was shown by the claimant that the deceased carried on her own business, hired and paid the help on the farm, sold the crops, and took into possession the moneys therefor. The claimant testified that, at the time the note in question was given, Mr. Feather called upon him for the loan, and that he refused to let him have the money, but told him he would loan it to Mrs. Feather if she would sign the note; that Mr. Feather returned shortly with the note signed by Mrs. Feather, and the money was paid over to him. There is no controversy but that Mrs. Feather signed the note. She died in 1890. The questions involved were submitted to the jury under a very fair charge, which correctly stated the law.

The contestant claims:

1. That there were many leading questions asked by counsel for claimant, and permitted by the court. While these questions were somewhat leading, they were matters entirely within the discretion of the trial court.

2. It appears that, on the first examination of the claimant, he testified that Mr. Feather came to him, and wanted to borrow the money, and that he told him that, if he would have his wife sign the note, he would let him have it, and that it was upon that condition he let him have it. He was afterwards recalled, and testified that, when Mr. Feather came to him for the money, he would not let him have it, but told him, if Mrs. Feather would sign the note, he would let her have it, and that Feather

afterwards came with the note signed by her. On his cross-examination he testified that he was told by his counsel that he had made a mistake about it, and that he thereupon was called to the stand to correct it. Some of the leading questions complained of refer to the testimony when claimant was recalled to make the explanations. The whole matter was properly before the jury, and no error was committed in the questions asked, or in permitting the explanations. It was a matter entirely within the discretion of the court.

3. Some contention is made that the court was in error in permitting counsel for claimant to ask Lizzie Feather the following question: "During the time your father and Mrs. Feather lived together, you may state who, if anybody, kept an account of all the financial transactions of the farm." She answered, "Mrs. Feather did." She also testified that Mrs. Feather employed and paid the help on the farm, kept an account book; that her father, when he sold the products of the farm, handed the money to Mrs. Feather; and that this continued all the time they lived together. We think this was a proper inquiry.

We think, also, that the court was not in error in permitting the claimant to show the circumstances under which he let Mr. Feather have the money. It was not a fact within the knowledge of the deceased; but the facts stated by the claimant, coupled with the fact shown that Mr. Feather acted as the agent of his wife in the transaction of all her business, had a tendency to show that the money borrowed was for the benefit and use of the deceased.

4. It is contended that there was no testimony tending to show that the money was borrowed for the use and benefit of the deceased. There is no direct testimony upon this point, but, as we have said, the circumstances under which it was borrowed, the fact that Mr. Feather was the general agent of his wife in all her business, that she handled all the money, paid the help upon the farm, that it was her farm upon which they lived, and the stock

and tools were kept there, and that the business was transacted from there, all had a tendency to show what was done with the money borrowed, and that it was for her use. We are not able to say that there was a total lack of evidence that the money was had for the use of Mrs. Feather. The case falls within the ruling of this court in *Feather* v. *Feather's Estate*, 116 Mich. 384.

The judgment must be affirmed.

The other Justices concurred.