PEOPLE *v.* KONGEAL.

1. CRIMINAL LAW—TRIAL—EXCLUSION OF WITNESSES—DISCRETION OF COURT.

The exclusion of witnesses from the court room in a prosecution for the crime of assault with intent to commit rape upon a female child under the age of consent, in violation of 3 Comp. Laws 1915, § 15212, after the father of the

child had testified as to her age, is within the discretion of the trial court.

2. Same — Assault with Intent to Rape — Venue — Evidence — Sufficiency.

Where the prosecuting witness, a girl 14 years of age, of limited intelligence, testified that the assault was made in an automobile while it was stopped near the corner of a certain street, but apparently was unable to testify understandingly that it was in the city of Detroit, but during the trial she went with an officer and pointed out to him the spot where the automobile stood, and thereafter she further described the place, and the officer testified that said street and the place pointed out by her were within the city of Detroit, said testimony was competent as to the venue, and whether it established the same beyond a reasonable doubt was for the jury.

3. Same—Evidence—Sufficiency.

Testimony of prosecutrix that defendant assaulted her while in the back seat of the automobile, at a certain place, and that he tried to have connection with her, tearing her underwear during said assault, said torn garment being produced in court, identified by her and admitted in evidence as an exhibit, *held*, sufficiently direct and positive to sustain a conviction, although her testimony in certain other respects as to the details of their trip in the automobile was somewhat confused as to the sequence of events.

4. Same—Trial—Jury Judges of Credibility of Witnesses.

The jury are the triers of the facts and judges of the credibility of the witnesses, and it is for them, and not the court, to determine what weight should be given to the testimony.

5. Same — Trial — Elements of Offense — Burden of Proof — Proof—Instructions.

*Held*, that the court correctly instructed the jury as to the elements of the offense charged, the lesser offenses covered by the charge, and the burden of proof, and that it was their duty to acquit in case of a reasonable doubt as to the proof of any element of the offense.

6. Same—Trial—Assault with Intent to Rape—Consent—Instructions.

The court properly refused a requested instruction that be-

fore defendant could be convicted the jury must find that he assaulted the complaining witness with intent to have intercourse with her against her will, since, she being under the age of consent, under the statute he would be guilty even if she consented to the assault.

7. SAME—LEADING QUESTIONS—DISCRETION OF COURT.
   *Held*, that there was no abuse of the discretion of the court in permitting leading questions to be asked and answered, under the conditions shown in the record.

8. SAME—CONSTITUTIONAL LAW—COLLATERAL ATTACK—DE FACTO COURTS—JUDGMENTS.
   Defendant's contention that Act No. 369, Pub. Acts 1919, under which the trial judge held office, was unconstitutional and therefore the conviction should be set aside cannot be sustained, since the legality of said court cannot be attacked collaterally, and the judgments of a *de facto* court are held valid. *Gildemeister* v. *Lindsay, ante*, 299.

Error to recorder's court of Detroit; Heston (William M.), J. Submitted October 14, 1920. (Docket No. 114.) Decided December 21, 1920.

Joseph Kongeal was convicted of an assault with intent to commit the crime of statutory rape, and sentenced to imprisonment for not less than 5 nor more than 10 years in the State prison at Jackson. Affirmed.

*Louis J. Colombo* (*Cassius Hollenbeck*, of counsel), for appellant.

*Alex. J. Groesbeck*, Attorney General, *Matthew H. Bishop*, Prosecuting Attorney, and *Collins B. Scott*, Assistant Prosecuting Attorney, for the people.

STEERE, J. Defendant was tried and convicted by the verdict of a jury in the recorder's court of the city of Detroit of the crime of assault with intent to com-

mit rape upon Margaret Boley, a female child under the age of consent, in violation of section 15212, 3 Comp. Laws 1915, and sentenced to confinement in the State prison at Jackson for a period not exceeding 10 years. The case is here for review on various assignments of error, the first of which is directed to a ruling of the court excluding witnesses from the court room during the trial at the instance of the prosecution after the father of the girl alleged to have been assaulted had testified as to her age. This ruling was clearly within the discretion of the trial judge. *People* v. *Burns*, 67 Mich. 537; *People* v. *Martin*, 210 Mich. 139.

It is also urged as error that the court refused to direct a verdict of acquittal because the venue was not proven beyond a reasonable doubt and there was no reliable evidence establishing defendant's guilt of the offense charged against him. As to the venue, the offense was claimed to have been committed during an automobile ride taken by the parties between Detroit and Dearborn. Margaret Boley, the girl claimed to have been assaulted, was 14 years old and, as her testimony indicates, of limited intelligence for her age. She testified that the assault was made while the car was stopped near the corner of Martin street, but apparently was not able to testify understandingly that it was in the city of Detroit. Her confused answers on cross-examination as to distances and time consumed by the automobile in going from one place to another left uncertainty as to the venue, although she definitely located it near a grocery at the corner of Martin street when first upon the stand. After court had adjourned for the day, while the case was on trial, she went with an officer and pointed out to him the place where the automobile stood near Martin street when the assault was made. She thereafter further described the place and the officer testified that Martin

street and the place pointed out by her were within the city of Detroit, describing the locality. There was certainly competent testimony in the case as to the venue and whether or not it established the same beyond a reasonable doubt was for the jury.

The girl's parents testified as to her age, place and time of birth. She was the oldest of their five children and living at home attending public school, having been at school on the day of the alleged assault. She was acquainted with defendant who lived upon the same street near their home. She went out with him that evening without her parents' knowledge or consent on his invitation, as she testified, for a ride in an automobile which belonged to a friend of his. There were four in the party, the others being his brother with a girl she called "Katie." She testified that they left about 10 o'clock in the evening, went out to Dearborn, and on the way back while the car was stopped near Martin street defendant assaulted her while she was in the back seat of the car and tried to have connection with her, tearing her underclothing during the assault. The torn garment was produced in court, identified by her and admitted in evidence as an exhibit. Her testimony as to his assault upon her and efforts to have connection with her was direct and positive, distinctly covering the elements of the crime he was charged with. While she consistently adhered to her story in that particular, her testimony in certain other respects as to the details of their trip was somewhat disjunctive and more or less confused as to the sequence of events. Illustrative of this she testified as follows:

"When the automobile stopped on Martin street there were in it a girl with me and two fellows and myself. The two men were Joe Kongeal and Will Kongeal. Joe Kongeal, that was in the car, is the defendant here. The third party, the other girl, was Katie. When the automobile stopped on Martin street there

were four people in it.  On Martin street Joe tried to have intercourse with me.  When the automobile stopped there they lost a crank and they went up on Michigan avenue and got—and while they was gone this other girl with me started to run.  She was afraid, so she ran home and she took a bottle of whisky with her that was in the automobile.  They came back just in time and Bill started to run after her.  Then Joe says, 'Now, I have got you.  Now, I am going to have intercourse with you.'  Joe said it to me, about 2 o'clock, then he took me over to Bill's house.  That was three blocks and a half from the place where it stopped.  About an hour and a half after this connection they took me to the place where I stayed all night.  Katie did not come back at all.  She wasn't there when this happened."

Margaret was a young school girl of apparently childish intelligence and not experienced as a witness in court proceedings nor yet veteranized in the features of joy riding to which she was introduced that night, if as she testified.  Dr. French, the county physician who subsequently examined her physically, testified that he found her hymen yet intact.  The jury saw the girl upon the witness stand and heard her testimony both upon direct and cross-examination. They were the triers of the facts and judges of her credibility.  It was for them and not the court to determine what weight should be given to her uncontradicted account of the assault.  The court very carefully instructed the jury as to the elements of the offense charged and the lesser offenses covered by the charge, which were also properly submitted to them, with full instructions upon the burden of proof which "never shifts," and the requirement that "each and every element" of the offense as explained must be established by the prosecution beyond reasonable doubt, it being the duty of the jury to acquit in case of a reasonable doubt as to the proof of "any element of the offense."  The court committed no error in re-

fusing defendant's request for a directed verdict, nor in the charge under which it was submitted to the jury.

It is further contended that the court erroneously refused the following request of counsel:

"Before you may convict respondent of the crime alleged in the information you must first find that respondent assaulted complaining witness with intent to have intercourse with her against her will by using whatever force might be necessary to overcome whatever resistance she made."

The court did charge, closely following the language used in *People* v. *Courier*, 79 Mich. 366:

"It is necessary, however, gentlemen of the jury, that you find from the evidence that the defendant intended to have sexual relations with Margaret Boley, although the act was not consummated, that he took steps looking towards such intercourse and laid hands on her for that purpose, although he did not intend to use force."

Upon the question raised this instruction fairly advised the jury of the law in this State upon that subject as applied to a female child under the age of consent. In *People* v. *Goulette,* 82 Mich. 36, defendant was convicted of the crime of assault with intent to commit rape upon a girl under 14 years of age. The information contained three counts, respectively charging rape, assault with intent to commit rape and taking indecent liberties with her person in violation of the statute. As applicable here it was said:

"The only important and serious question raised by the record is whether the respondent was properly convicted under the second count, of an assault with intent to commit rape. * * * The point raised in behalf of the respondent is settled by the case of *People* v. *Courier,* 79 Mich. 366. Her own acts, she being under the age of consent, could form no legal justification to respondent for an assault upon her with intent to violate her person; nor was it necessary for the

jury to find, in order to convict, that he intended to gratify his passion, regardless of resistance."

In *People* v. *Chamblin,* 149 Mich. 653, the question was before this court on certiorari to review denial by the circuit court of a motion to dismiss a complaint and warrant because the preliminary examination before the committing magistrate did not show reasonable ground to believe the defendant guilty of an assault with intent to commit rape upon a girl less than 16 years of age. In dismissing the writ it is said:

"But the claim is now made that it cannot be inferred from this testimony that respondent intended to use force to accomplish his purpose, and that without proof of that intent he cannot be convicted of the crime charged in the complaint and warrant. As the complaining witness was under the age of 16 years, respondent would (see section 11489, 3 Comp. Laws) have been guilty of the crime of rape, if he had sexual intercourse with her, even though by her consent. And if, when he committed the assault respondent intended to have sexual intercourse by such consent, he was, under section 11490, as construed by this court in *People* v. *McDonald,* 9 Mich. 150, guilty of an assault with intent to commit the crime of rape."

We find no error in the refusal to charge complained of, nor in the charge as given.

Error is assigned on leading questions asked and permitted by the court while the girl was testifying. The few questions objected to which could be so characterized were asked in relation to certain details after she had testified in answer to proper questions not objected to that defendant tried to have connection with her, had said to her, when "Bill started to run after" the other girl, "now, I have got you," and that he was going to have intercourse with her; and in answer to the question, "What did he do?" replied, "Well, he started to get on top of me." It is unnecessary to pursue the subject. The allowance of such questions

is within the discretion of the court, and we find no indication of abuse of that discretion.    *People* v. *Jensen,* 66 Mich. 711; *Mason* v. *Partrick,* 100 Mich. 577; *Lungerhausen* v. *Crittenden,* 103 Mich. 173; *People* v. *Bernor,* 115 Mich. 692; *Webb* v. *Feather's Estate,* 119 Mich. 473; *Burnham* v. *Insurance Co.,* 119 Mich. 588; *People* v. *Wheeler,* 186 Mich. 489.

Counsel for defendant contend that this case is ruled by *People* v. *Dowell,* 136 Mich. 308, of which Justice GRANT, who wrote the opinion, said: "This is an anomalous case.   I have found no one like it in the books."   The *McDonald, Courier* and *Goulette Cases* were then in the books and evidently not regarded as analogous.   The female child alleged to have been assaulted in the *Dowell Case* "lacked but one month of being 16 years of age," the assault was alleged to have been committed "in broad daylight, in front of defendant's shed, along a public highway."   According to the girl's testimony no indecent liberties were taken with her person by the accused.   His turpitude consisted of what he proposed rather than what he did. She stated that after some preliminary conversation he took her by the arm and tried to pull her into the shed, saying, however, "he did not disarrange my clothing, or knock off my hat, or displace a button. Not a single thing was done there to my wearing apparel by which it was put out of shape or put out of order.   There was no scuffle."   She also said that during the incident, "I told him I was afraid I would get in a family way; and he says, 'I will get you a French safe.'"   In commenting on this and other peculiarities of the case it is said in the opinion:

"She shows a not very creditable knowledge of the meaning of sexual intercourse and its consequences.   *   *   *   If she understood his object to be sexual intercourse when he took hold of her arm, and she said she was afraid of the consequences, and he then promised to get her a French safe, the language

of his reply would hardly justify the conclusion that he contemplated intercourse at that time, but at some future time."

The court also held the admission of certain hearsay testimony erroneous, commented upon the duty of the court to instruct the jury fully as to the elements of the offense charged, and criticized the following portion of the charge:

"As I said to you, she could not consent, even though she might have been the one who solicited it. If he sought to do that with her with that intent, then he would be guilty."

This was said to be erroneous because it left out the question of assault, as "Actual violence or actual assault is essential to the commission of this crime, even upon a girl under the age of consent." This language is particularly urged in support of defendant's contention here. Neither the circumstances of the case or quoted portion of the charge are analogous. In this case there was direct proof of an indecent assault, and the court particularly charged as elements of the crime that, to convict, the prosecution must prove "defendant made an assault with intent to unlawfully and carnally know and abuse Margaret Boley," and otherwise enlarged upon the distinctions and characteristics applicable to the offenses charged.

Defendant's other assignments of error directed to matters arising during the trial have been examined but are not regarded as involving any reversible error or meritorious question requiring discussion.

Although the question is not shown to have been raised in the trial court, defendant's last assignment of error attacks the constitutionality of Act No. 369, Pub. Acts 1919, under which the judge before whom he was tried held office and the recorder's court of Detroit was reorganized, contending that he was not

tried before a legally constituted court and his conviction was therefore a nullity.

It cannot be questioned that the recorder's court as originally created was and is a lawful court with jurisdiction to try the kind of offense with which defendant was charged. It was continued in existence by the wording of the act questioned, which in specified particulars enlarged its jurisdiction, increased the number of judges and made other provisions relative to its organization and procedure. The court was organized and in operation pursuant to an act of the legislature presumptively valid, and the judge hearing this case was performing the duties of that office at a public session of said court under color of legal right to the same. By the most narrow definition he was a *de facto* officer. Under such a situation we are of opinion that, in reason and by authority, sound principles of public policy prohibit collaterally attacking the legal existence of such a court or its *de facto* officers otherwise than in a direct proceeding by *quo warranto*. The subject is carefully reviewed with citation of authorities by Justice STONE in *Gildemeister* v. *Lindsay, ante,* 299, which in principle fully sustains this view and is controlling here.

The conviction and sentence will stand affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.