WEAVER, J.
The Judicial Tenure Commission (JTC) recommended that this Court remove 63rd District Court Judge Steven Servaas (respondent) from office for vacating his judicial office, as well as for judicial misconduct involving a comment and two drawings of a sexual nature. Because we conclude that the only appropriate forum to determine whether respondent vacated his judicial office is a quo warranto action filed by the Attorney General in the Court of Appeals, we reject the JTC’s recommendation as to the vacation of office claim. Respondent’s conduct concerning the comment and two drawings was unquestionably inappropriate; however, a majority of this Court concludes that respondent’s conduct did not rise to the level of blatant judicial misconduct requiring the most severe sanction: removal from office. In this respect, we view respondent’s actions as an aberration given his 35 years of apparently unblemished service as judge of the 63rd District Court. Accordingly we impose public censure only.
i
Respondent is a judge of the 63rd District Court, 1st Division, in Rockford, Michigan. On February 14, 2008, the JTC filed Formal Complaint No. 84,[1] alleging that respondent had committed judicial misconduct in violation of Const 1963, art 6, *638 § 20;[2] MCR 9.104[3] and MCR 9.205;[4] and the Michigan Code of Judicial Conduct (MCJC), Canons l,[5] *639 2(A) through (C),[6] and 3A(3).[7]
Specifically, the first count of the complaint alleged that respondent vacated his judicial office in violation of Const 1963, art 6, § 20[8] when he changed his primary residence from Cannon Township, which is located in the 1st Division of the 63rd District Court, to Ada Township, which is located in the 2nd Division of the same judicial district.[9] The second count of the corn- *640 plaint alleged that respondent failed to comply with statutory notification requirements when he failed to change his driver’s license information and voter registration to reflect his move to Ada Township.
The third count of the complaint alleged that respondent engaged in sexually inappropriate conduct directed toward female court employees, citing three specific examples. In the first instance, it was alleged that respondent drew female breasts on a note that was attached to a court file. The drawing was made after a female clerk commented on the revealing dress of a woman who appeared in court. The second event concerned the drawing of a penis that appeared on a note attached to a court file. The third instance occurred during a retirement party for an employee at the 2nd Division courthouse. While at the party, respondent commented on a university sweatshirt worn by a female *641 clerk employed in the 2nd Division. Respondent stated that the woman had “an awfully small chest” for the college indicated on the sweatshirt and “should have gone to a smaller school like Alma,” which would have fit her “small chest better.”
On March 5, 2008, this Court appointed the Honorable Casper O. Grathwohl as master to hear the case. The master’s report, issued on May 12, 2008, concluded that respondent vacated his judicial office in violation of Const 1963, art 6, § 20 when he changed his principal residence from the 1st Division to the 2nd Division of the 63rd District Court in August 2005. The master recommended that the second count of the complaint be dismissed.[10] The master further concluded that respondent’s “sexual doodles and sexual communication” constituted judicial misconduct and compromised the integrity of the court.
Respondent filed objections to the master’s report. The JTC issued its decision and recommendation for an order of discipline on October 17, 2008. The JTC adopted the master’s findings of fact and conclusions of law, with the exception of finding that respondent had moved to the 2nd Division “as early” as 2000. In making this factual finding, the JTC relied on documentary evidence that was offered solely for impeachment purposes in the proceedings before the master, but was not substantively admitted.[11] On the basis of the findings of *642 fact and conclusions of law, the JTC recommended that respondent be removed from office. The JTC further recommended that respondent be assessed fees and costs in the amount of $8,364.38 because respondent “engaged in deceit and intentional misrepresentation.”
ii
This Court reviews the recommendations and findings of the JTC de novo.[12] The standard of proof in judicial disciplinary proceedings is a preponderance of the evidence.[13]
A. VACATION OF OFFICE
Const 1963, art 6, § 20, provides that “[wjhenever a justice or judge removes his domicile beyond the limits of the territory from which he was elected or appointed, he shall have vacated his office.” The parties agree that the term “domicile” refers to respondent’s primary residence. Furthermore, respondent admits that he changed his primary residence to the second election division from 2005 to 2008.[14] The dispute centers on the meaning of the word “territory.” Respondent argues that “territory” refers to the entire 63rd Judicial District, while the JTC argues that the term is limited to the election division within the district. Thus, when respondent moved his primary residence from the first election division to the second election division of the 63rd District Court, the JTC maintains that respondent *643 vacated his office, possessed no authority to continue to serve as a judge, and functioned as a “nonjudge masquerading as a judge.”
However, this Court need not address which argument is correct, nor reach a conclusion regarding whether respondent vacated his office because our statutes, caselaw, and court rules provide that a quo warranto action brought by the Attorney General in the Court of Appeals is the only appropriate and exclusive proceeding to make the preliminary determination regarding whether respondent vacated or unlawfully held his judicial office.[15]
MCL 600.4501 provides that the Attorney General shall bring an action for quo warranto “when the facts clearly warrant the bringing of the action.”[16] MCR 3.306(A)(1) provides that the quo warranto action must *644 be brought in the Court of Appeals when a person “usurps, intrudes into, or unlawfully holds or exercises a state office” or if a state officer “does or suffers an act that by law works a forfeiture of the office.” If a quo warranto action claims usurpation of office, the judgment “may determine the right of the defendant to hold the office.”[17] Moreover, if a defendant in a quo warranto proceeding is found to unlawfully hold or exercise the office at issue, the defendant may be assessed fines[18] and damages[19] in addition to being ousted from office. Significantly, our caselaw has held for more than a century that “[t]he only way to try titles to office finally and conclusively is by quo warranto. ”[20]
Notwithstanding, the JTC asks this Court to make the prefatory determination that respondent vacated his office under Const 1963, art 6, § 20, and that he consequently “was no longer a judge” and acted “without judicial authority,” as a basis of removing respondent from office for judicial misconduct. However, this determination is precisely the issue to be resolved in a quo warranto action. While this Court could certainly review on appeal the decision made by the Court of Appeals in a quo warranto action,[21] and could determine *645 whether the conduct surrounding respondent’s forfeiture of office rose to the level of judicial misconduct warranting judicial discipline,[22] an original proceeding in the Supreme Court[23] is not the appropriate place to determine in the first instance whether respondent vacated his office. Rather, the law requires that this question be initiated by the Attorney General and resolved as an initial matter by the Court of Appeals.[24]
Consequently, all evidence and testimony obtained during the proceeding by the JTC regarding whether respondent had vacated his office was obtained through an unconstitutional process because the JTC has no authority to proceed on the quo warranto issue or to determine whether respondent vacated his office. That determination can only be made by the Court of Appeals in a quo warranto proceeding, which could then be appealed to this Court. If a quo warranto action has been successfully brought in the Court of Appeals, and that decision is affirmed by this Court, only then may the JTC act on the appellate court decision and determine whether there has been any judicial misconduct associated with the determination of the Court of Appeals that a judge has vacated his or her office.
Moreover, had the Michigan Supreme Court decided in a quo warranto appeal that respondent had vacated *646 his office, the Supreme Court would have had the power to remove respondent from office, and, had that happened, any JTC proceeding regarding judicial misconduct involving the vacation of office would have been moot because the Supreme Court had already exercised the most severe punishment. Simply put, the JTC had the cart before the horse.
Just as the JTC has neither the authority nor the power to decide whether a judge vacated his or her office, this Supreme Court does not have any constitutional authority to grant that authority and power to the JTC. The JTC only has the authority to let the quo warranto process lawfully proceed to a legal determination of whether or not a judge has vacated his or her office.
With regard to our conclusion in this regard, we reject Justice MARKMAN’s attempt to characterize the JTC as having made a “determination” to which this Court must defer. The JTC only has the authority to “recommend” disciplinary action. Justice MARKMAN’s attempt to couch our “rejection” as unbelievable is improper. Indeed, Justice MARKMAN asserts that a majority of this Court errs in its review of the JTC decision by “affording] no deference whatsoever to the commission’s factual findings.” Post at 655 (emphasis added). To be precise, while this Court has a duty to review a recommendation, as to the deference afforded the JTC after this Court reads the recommendation, there is no duty to accept, or to defer, to any part of the JTC’s recommendation. This Court has no duty to accept, even in part, any JTC “decision” because the JTC does not have the power to decide how and whether to discipline a judge; the JTC can only make recommendations to this Court and, in this regard, our review of *647 JTC recommendations is de novo.[25] In re Somers, 384 Mich 320, 323; 182 NW2d 341 (1971).
As established in Const 1963, art 6, § 30(2):
On recommendation of the judicial tenure commission, the supreme court may censure, suspend with or without salary, retire or remove a judge for conviction of a felony, physical or mental disability which prevents the performance of judicial duties, misconduct in office, persistent *648 failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of justice.
For comparison purposes, consider this scenario: if the JTC believes a judge has committed armed robbery, it has no authority to proceed to determine whether or not the judge did commit armed robbery. Only the criminal judicial system guided by statutes and court rules has the authority to make that determination. If the court process legally determines a judge is guilty of armed robbery, only then can the JTC recognize the legally determined fact that the judge committed the crime and only then can the JTC bring a proceeding for judicial misconduct on the basis of the court’s ruling that a judge committed the crime of armed robbery.
B. CONDUCT OF THE EXECUTIVE DIRECTOR OF THE JTC
On January 16, 2008, the executive director of the JTC personally served respondent with a 28-day notice pursuant to MCR 9.207(D)(1).[26] The executive director arrived unannounced at respondent’s chambers accompanied by an armed Michigan State Police lieutenant. Apparently, unbeknownst to either respondent or the director, the police officer recorded the conversation.
The director presented respondent with the 28-day notice, and asserted that respondent’s office was “vacant” because respondent had moved outside his district, as evidenced by his homestead tax exemption *649 affidavit.[27] In addition to the notice, respondent was also presented with a petition for interim suspension without pay, which the director indicated would be immediately filed and mostly likely granted because respondent was “not in office.”
The director then offered respondent the “opportunity to resolve” the matter quickly without any “shame, proceedings, [or] accusations of perjury” by resigning “immediately,”[28] presenting respondent with a prepared resignation letter on respondent’s court letterhead. The director stated that, although the JTC indicated that respondent had until 9:00 a.m. the next morning to sign the resignation letter, the director would “prefer” to have the resignation letter signed “right now” so that he could “take the letter with” him.
When the respondent protested, seeking “time to talk to somebody,” the director replied that respondent would be “suspended in a matter of days” and that it would all “become public” at a time when respondent was “up for election.” The director reiterated the 9:00 a.m. deadline, adding that respondent also faced allegations involving the sexually inappropriate behavior, and the director would get respondent “thrown off [the bench] just for that.” When respondent asked questions regarding the basis of the allegations of sexually inappropriate behavior, the director replied that he was not there “to do any type of interview” and would not “explain anything else.”
The director told the respondent that he could “take the easy way out” and sign the resignation letter; otherwise, the director “welcome[d] the opportunity” *650 and would “engage to the fullest” if respondent chose to “fight it.” When respondent observed that criminal defendants were given “more consideration” than was being afforded to him, the director responded that immediately signing the resignation letter would “avoid having to drag [respondent’s] name through the mud,” “avoid any embarrassing situations,” and avoid the “stain to the state judiciary” of having a judge who “violates the law, commits perjury, [and] sexually harasses staff.” After respondent refused to sign the resignation letter on the spot, the meeting concluded. A moment later, the director was heard saying that “it’s like shooting ducks in a barrel.”
When these proceedings commenced, the director’s threats to humiliate respondent and drag his name through the mud were soon realized. The details of the present allegations were widely disseminated in the local newspapers, on television, and on the Internet over the course of several months. The controversy, including the facts surrounding the meeting between respondent and director, were the subject of numerous newspaper articles, editorials, and letters to the editor.[29] While the actions of the JTC director have been called into question, this Court need not address whether he violated any ethical rules because the proper forum for the review of the JTC director’s actions is the Attorney Grievance Commission.
*651 c. inappropriate drawings and comment
The remaining allegation of judicial misconduct concerns respondent’s sexually inappropriate conduct directed toward female court employees. The testimony indicates that on two separate occasions respondent made lewd drawings — one of female breasts and one of a penis — on notes that were attached to two court files. The testimony further indicates that respondent commented on the small chest size of a 2nd Division female employee during a retirement party at the 2nd Division courthouse. Notably, even respondent realized he had made a mistake because he called the employee the following day to apologize personally to her. Unfortunately, she would not return his calls, so he finally left a message on her voice mail apologizing for the gaffe.
Respondent’s counsel acknowledged that respondent’s conduct was “inappropriate,” but contended that it was spontaneous and represented “isolated” incidents from respondent’s nearly 37-year career. Respondent’s counsel argues that respondent’s conduct warrants, at most, a public reprimand. This argument is consistent with the recommendations of the JTC, which indicated that with respect to count 3, respondent’s sexually inappropriate conduct merited a public censure.
We agree with the JTC that respondent’s sexual conduct was crass and inappropriate; however, we do not agree that respondent’s conduct rises to the level of judicial misconduct beyond requiring public censure.
D. VERACITY OF RESPONDENT’S TESTIMONY
While Justice Markman appears to assert that whether or not the JTC had the authority to proceed, sanctions against respondent are appropriate given *652 Justice MARKMAN’s conclusion that respondent lied under oath. Having reviewed the entire record closely, we do not agree with Justice MARKMAN’s conclusion that respondent lied under oath.[30] On the contrary, we agree with respondent’s counsel that this is not a case of arrogance. Instead, it appears that respondent believed that he was still properly in his district and that there was no problem with living outside of the 1st Division.
At the time these proceedings occurred, respondent had seven residences. He owned homes in both the 1st and 2nd divisions of the 63rd District Court. He rented a home in the 1st Division, and he also owned homes in Whitefish Lake, Michigan; Ludington, Michigan; North Carolina; and Florida. Respondent testified that he renovates houses as a hobby, and that from 2000 to 2005, he often spent the night at one of the two houses he was renovating in the 2nd Division when he was too tired to drive back to his 1st Division residence.
*653 Thus, during this five-year period, respondent testified that he went back and forth between the houses as necessary for the remodeling projects. Certainly he cannot be expected to have to subsequently provide facts establishing that he was residing in one house or two houses after so much time had passed and without being prompted by any particular reason to so do. Again, respondent’s actions in this regard support his perception that it didn’t matter whether he spent the night at the 1st Division house or the 2nd Division house, because he was still residing in the 63rd District.
Respondent admitted that from 2005 on, he resided in the 2nd Division home, and the record reflects that he did nothing to hide this fact. Indeed, respondent’s name, address, and telephone number for the 2nd Division home were listed in the local phone book.
Specifically during a meeting in approximately late March 2006 between respondent, the State Court Administrator, and the JTC executive director, the State Court Administrator, said to respondent, “You’re not living in your district.” In response, respondent said “I am too.” Importantly, we note that even though respondent was first accused of vacating his judicial office in early 2006, it appears that no assertion was made again until respondent was ambushed on January 16, 2008. Again, respondent did not try to deny the fact that he was living in the 2nd Division at that time, because he thought he could live in that division as long as he was not running for reelection.
Consequently, we do not conclude that respondent lied under oath. At times he seemed confused and could not remember a series of different telephone numbers (until he later refreshed his recollection), specific dates and times, and events that occurred nearly 10 years *654 before he testified. In fairness, we cannot conclude that respondent intentionally lied under oath.
III. CONCLUSION
Because we conclude that the only appropriate forum to determine whether respondent vacated his judicial office was a quo warranto action filed by the Attorney General in the Court of Appeals, we reject the JTC’s recommendation with respect to the vacation of office claim. Because the JTC lacked legal authority to bypass submission of the quo warranto action by the Attorney General, the finding that respondent vacated his office is null and void. The powers held by the JTC simply do not include the power by the JTC to determine the existence of a vacancy in judicial office.
Finally, with respect to the claim against respondent for judicial misconduct involving a comment and two drawings of a sexual manner, while respondent’s conduct was unquestionably inappropriate, we believe, under the unique circumstances of this case that only public censure is required. Accordingly, this opinion stands as our public censure.
Pursuant to MCR 7.317(C)(3), we direct the Clerk of the Court to issue the judgment order immediately.
CAVANAGH and HATHAWAY, JJ., concurred with Weaver, J.

 On both January 17, 2008, and February 14, 2008, the JTC filed petitions for interim suspension without pay pending final resolution of this matter. Both petitions were denied by this Court.

 See note 8 of this opinion.

 MCR 9.104(A) states in part:
The following acts or omissions by an attorney, individually or in concert with another person, are misconduct and grounds for discipline, whether or not occurring in the course of an attorney-client relationship:
(1) conduct prejudicial to the proper administration of justice;
(2) conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach;
(3) conduct that is contrary to justice, ethics, honesty, or good morals;
(4) conduct that violates the standards or rules of professional responsibility adopted by the Supreme Court!.]

 MCR 9-205 states in part:
(A) Responsibility of Judge. A judge is personally responsible for the judge’s own behavior and for the proper conduct and administration of the court in which the judge presides.
(B) Grounds for Action. A judge is subject to censure, suspension with or without pay, retirement, or removal for... misconduct in office ... or conduct that is clearly prejudicial to the administration of justice....
(1) Misconduct in office includes, but is not limited to:
(c) persistent failure to treat persons fairly and courteously;
(d) treatment of a person unfairly or discourteously because of the person’s race, gender, or other protected personal characteristic!.]

 Canon 1 of the Code of Judicial Conduct states in part:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing,
*639 maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. A judge should always be aware that the judicial system is for the benefit of the litigant and the public, not the judiciary.

 Canon 2 of the Code of Judicial Conduct states in part:
A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety....
B. A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person’s race, gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect.
C. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not use the prestige of office to advance personal business interests or those of others.

 Canon 3(A)(3) Code of Judicial Conduct provides:
A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of lawyers, and of staff, court officials, and others subject to the judge’s direction and control.

 Const 1963, art 6, § 20, provides that “[wjhenever a justice or judge removes his domicile beyond the limits of the territory from which he was elected or appointed, he shall have vacated his office.”

 Justice Markman’s argument conflates the complaint of vacation of office with the other complaints- concerning inappropriate sexual conduct. In doing so, he asserts that it is perfectly appropriate for the JTC to bring an action asserting vacation of office, along with any other *640 assertions concerning disciplinary conduct. A study of Const 1963, art 6, § 30(2), and MCR 9.205(B) contradicts this argument. Specifically, the JTC’s authority is limited to bringing actions against a judge
for conviction of a felony, physical or mental disability which prevents the performance of judicial duties, misconduct in office, persistent failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of justice. [Const 1963, art 6, § 30(2).]
The JTC has no authority to complain that a judge has vacated his office.
An allegation of vacation of office is distinct from the JTC’s authority to recommend to this Court that a judge be censured by removal from office. Further, Justice Markman asserts, without citing any authority, that it is perfectly appropriate for a quo warranto complaint to be combined with complaints for judicial misconduct. To the contrary, pursuant to MCR 3.306(A)(1), an action for quo warranto “must be brought in the Court of Appeals.” MCR 3.306 says nothing about whether the JTC has any legal authority to bring a complaint of quo warranto and a complaint of judicial misconduct in a JTC proceeding. An allegation of quo warranto is not magically converted into another kind of judicial misconduct simply by linking the allegation to actual judicial misconduct complaints.

 The examiner did not file any objections to the master’s report, as required by MCR 9.215. Despite the apparent forfeiture of the issue, however, the JTC “agree[d] with and adopt[ed]” the master’s conclusions regarding count II. In light of the forfeiture of the issue, it will not be further discussed in this opinion.

 The examiner indicated that he did “not intend to offer” the documents into evidence because he had not provided respondent with copies of the exhibits as required by both the pretrial order and MCR 9.208(C) (1) (a)(i).

 MCR 9.225; In re Somers, 384 Mich 320, 323; 182 NW2d 341 (1971).

 In re Loyd, 424 Mich 514; 384 NW2d 9 (1986).

 Although the JTC found that respondent moved from the first election division to the second election division in 2000 rather than 2005, in light of respondent’s admissions, that finding adds no weight to the allegations that respondent vacated his office.

 Justice Markman, post at 664, asserts that another reason that the JTC, and not the Court of Appeals, can bring a vacation of office complaint is that the quo warranto statute, MCL 600.4505, implies that actions for quo warranto may only be brought for “claims that a public official is currently exercising an invalid title to office.” At the time the JTC brought its complaint for vacation of office against the respondent, respondent was currently in office. There is no support for this argument in MCL 600.4505, and In re Kapcia, 389 Mich 306; 205 NW2d 436 (1973), does not support this assertion. Rather, the Court in Kapcia declared that its opinion did not consider whether a quo warranto action by the Court of Appeals was required for a judge who had lost his license to thereafter determine whether the judge had vacated his office. Wisely, that Court recognized the Court of Appeals initial exclusive jurisdiction with respect to quo warranto proceedings. Justice Markman, post at 670 n 16, asserts that Kapcia establishes that the JTC cannot use any other entity’s findings, including those of the Court of Appeals. Again, with respect to a quo warranto proceeding, the JTC has no authority to make a finding that a judge improperly vacated his office. The JTC only has the authority to recommend what disciplinary measure should be exercised by this Court based on the exclusive right of the Court of Appeals to make the determination in a quo warranto proceeding.

 If the Attorney General refuses to act, a private party may bring the action upon leave of the court. MCL 600.4501.

 MCL 600.4505(1).

 MCL 600.4515.

 MCL 600.4511.

 Frey v Michie, 68 Mich 323, 327; 36 NW 184 (1888) (emphasis added). See also Metevier v Therrien, 80 Mich 187, 45 NW 78 (1890); People v Kongeal, 212 Mich 307, 317, 180 NW 636 (1920) (cannot attack “the legal existence of such a court or its de facto officers otherwise than in a direct proceeding by quo warranto”); Gildemeister v Lindsay, 212 Mich 299, 180 NW 633 (1920); Sempliner v FitzGerald, 300 Mich 537, 2 NW2d 494 (1942); Cook v Burhans, 304 Mich 108, 7 NW2d 370 (1942); People v Russell, 347 Mich 193, 79 NW2d 603 (1956); Layle v Adjutant General, 384 Mich 638, 641; 186 NW2d 559 (1971) (“[Q]uo warranto is the proper and exclusive remedy to try title to office ....”).

 MCR 7.301(2).

 Const 1963, art 6, § 30; MCR 9.225. Because no quo warranto action was filed and no determination was made regarding whether respondent vacated his office, we need not determine whether the act of vacating judicial office constitutes sanctionable judicial misconduct.

 MCR 7.304.

 By analogy, Const 1963, art 6, § 30(2), provides that this Court may discipline, retire, or remove a judge for conviction of a felony. It could hardly be argued, however, that this Court rather than the circuit court should adjudicate and convict the judge of the felony simply because the unresolved predicate issue arose during the course of a judicial disciplinary proceeding. In re Laster, 404 Mich 449, 274 NW2d 742 (1979), cited by the JTC, is simply not responsive to this issue.

 Contrary to Justice Markman’s assertion, our decision today does not affect the standard by which this Court reviews JTC recommendations. As Justice Markman accepts, we review the JTC’s recommendations de novo. In re Somers, 384 Mich 320, 323; 182 NW2d 341 (1971). And we are aware of no mandate that this Court give deference to the JTC’s “decisions.” The Michigan Constitution does not require that we give any deference to the JTC’s “decisions.” Moreover, we have held that any deference given to the JTC’s “recommendations” is contingent upon us finding that the JTC’s analysis was “reasonably done.” In re Chrzanowski, 465 Mich 468, 488; 636 NW2d 758 (2001). In this case, for the reasons noted in this opinion, we conclude that the JTC’s analysis fell below the “reasonably done” threshold. We have also limited any deference regarding factual findings to the master’s credibility determinations. Loyd, supra at 535-536. That deference was further limited to when the credibility determination was supported by the whole record. Id. We have never articulated a deference requirement toward the JTC’s credibility determinations. This is an important distinction in this case because the JTC did not accept the master’s credibility determinations; instead, it went beyond the master’s conclusions and, as Justice Markman rightly states, “decided” that respondent had moved out of his division at a date earlier than when the master had determined. Notably, it was this “decision” on which the JTC hinged its removal recommendation. Thus, any deference to a credibility determination would apply to the master’s findings, assuming that they were supported by the entire record; it would not apply to the JTC’s contrary “decision.” This is yet another reason for us to conclude that the JTC’s “recommendation,” much less its “decision,” granted no deference in this case. It is unclear why Justice Markman believes we are required to give the JTC’s “decisions” deference. Further, assuming Justice Markman is correct that this Court is bound to give some modicum of deference to the JTC’s recommendations, that rule does not apply here because the JTC’s analysis was not reasonably done, and its credibility conclusions are contrary to those of the master.

 The notice must be given 28 days before filing a complaint. The “purpose of the notice is to afford the judge the opportunity to apprise the commission, in writing within 28 days, of such matters as the judge may choose, including information about the factual aspects of the allegations and other relevant issues.” MCR 9.207(D)(1).

 The director indicated that, if respondent had not abandoned his office, then he must have filed a false affidavit, which constituted the crime of perjury.

 The director reiterated that “immediately means immediately.”

 Disorder in the District Court? Grand Rapids Press, January 15, 2008, at B2; Servaas battles to stay on bench, Grand Rapids Press, February 16, 2008, at Al; Residents critical of inquiry involving judge, Grand Rapids Press, February 17, 2008, at Bl; Rockford rallies around judge, Grand Rapids Press, February 20, 2008, at Bl; Deputies support Servaas’ bid, Grand Rapids Press, February 27, 2008, at Bl; Servaas attack called ‘reckless’, Grand Rapids Press, March 1, 2008, at A3.

 In fact, respondent’s admissions of moving to the 2nd division house establish that respondent believed he had nothing to hide because, under his interpretation of the law, he did not “vacate his office” if he simply-lived in another division of the same district. Further, respondent’s failure to change the address on his concealed weapons permit does not establish that he intended to deceive anyone. In the first instance, respondent was renewing his permit. Since November 13, 2001, the date the respondent first applied for the permit, his address remained the same. In fact, as demonstrated by succeeding safety inspection certificates and by his own testimony for succeeding years, respondent did not even pay attention to the address line as it had already been completed for him by the Rockford Chief of Police. All he had to do was sign the permit. Again, rather than a deliberate attempt to deceive officials about his change of address, respondent’s explanation was very credible. Specifically, the failure to change his address was simply an oversight: respondent did not think to read the form and make any corrections, as he admitted that he did not read the form — he just put the gun and the renewed certificate under the bench.