# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 2, 2010

139546 & (8)

In re:

HON. BENJAMIN H. LOGAN, II
Judge, 61ˢᵗ District Court.

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 139546
JTC: Formal Complaint No. 85

_____/

By order of March 12, 2010, we remanded this matter to the Commission for further explication. The Commission responded by letter of May 3, 2010. This Court has reviewed the Commission's letter.

On order of the Court, the Judicial Tenure Commission has issued a Decision and Recommendation, to which the respondent, 61st District Court Judge Benjamin H. Logan, II, consents. It is accompanied by a settlement agreement, in which the respondent waived his rights, stipulated to findings of fact and conclusions of law, and consented to a sanction that would be no greater than a public censure.

In resolving this matter, we are mindful of the standards set forth in *In re Brown*, 461 Mich 1291, 1292-1293 (2000):

> [E]verything else being equal:
>
> (1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
>
> (2) misconduct on the bench is usually more serious than the same misconduct off the bench;
>
> (3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
>
> (4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;

(5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;

(6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;

(7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.

In the present case, those standards are being applied in the context of the following findings of fact of the Judicial Tenure Commission, which, following our de novo review, we adopt as our own:

1.      Respondent is, and was on June 17, 2008, the Chief Judge of the 61st District Court in the City of Grand Rapids, Kent County, Michigan.

2.      On June 17, 2008, an altercation took place at the Grand Rapids home of [Kent County Commissioner] Mr. James Vaughn, which involved Mr. Vaughn, Cassandra Mitchell and Ida Cross. As a result of the incident, Ms. Cross required medical treatment.

3.      That same day, Mr. Vaughn was arrested by officers of the Grand Rapids Police Department (GRPD) on a probable cause charge of aggravated domestic assault and taken to the Kent County Correctional Facility (KCCF). He was booked at approximately 9:26 a.m.

4.      A few hours later, [Kent County Commissioner] Mr. Paul Mayhue visited Mr. Vaughn at KCCF.

5.      Respondent is an elected official in the City of Grand Rapids (Kent County), and James Vaughn is an elected member of the Kent County Board of Commissioners. Paul Mayhue served on that Board with Mr. Vaughn until Mr. Mayhue's defeat in the August, 2008 primary.

6.      Respondent and Mr. Mayhue engaged in a series of telephone calls on June 17, 2008, most of which while Mr. Vaughn was incarcerated. The identity of the callers and times are as follows:

        (a)     Mr. Mayhue to Respondent at approximately 12:22 p.m.;

        (b)     Respondent to Mr. Mayhue at approximately 1:41 p.m.;

(c)     Respondent to Mr. Mayhue at approximately 1:48 p.m.;

(d)     Respondent to Mr. Mayhue at approximately 2:03 p.m.;

(e)     Mr. Mayhue to Respondent at approximately 2:08 p.m.;

(f)     Respondent to Mr. Mayhue at approximately 9:15 p.m.;

(g)     Mr. Mayhue to Respondent at approximately 9:40 p.m.

7.     Telephone company records reflect that:

(a)     Most of the calls lasted a minute or less, and resulted in voice mail messages being left or in no contact at all; and that

(b)     The phone call from Mr. Mayhue to Respondent at 2:08 p.m. lasted approximately 15 minutes.

8.     Respondent was not handling arraignments at the 61st District Court on June 17, 2008, when a person in Mr. Vaughn's situation could expect to be arraigned.

9.     While Mr. Vaughn was incarcerated, Respondent directed his staff to obtain a copy of the initial police report, which was obtained by accessing the GRPD's computer system at the 61st District Court.

10.     At approximately 2:30 p.m., Respondent directed that a fax be sent to the KCCF reporting that he had sent a personal recognizance bond for Mr. Vaughn in the amount of $5,000 with conditions, among others, that he have no contact with either Cassandra Mitchell or Ida Cross. The fax was sent as directed.

11.     Respondent did not contact the GRPD for additional information, but relied on the initial investigation report in determining to authorize the bond.

12.     At 2:50 p.m. Mr. Vaughn was released from the KCCF upon agreeing to the terms of the bond set by Respondent.

13.     Shortly after Mr. Vaughn's release on bond, the GRPD telephoned the KCCF to authorize his release pending further investigation. The detective in charge of the investigation was unaware that Mr. Vaughn had been released on bond.

14.     Respondent did not direct that the GRPD be informed of the bond he had set for Mr. Vaughn, but it is the practice of the 61st District Court to fax

to the Department all special bond conditions like those which were set by Respondent for Mr. Vaughn, which was done at the same time the KCCF was informed of the bond. The fax was sent, as is common practice, to the GRPD Warrant Office, not the investigating detective.

15. Mr. Vaughn was subsequently charged in July, 2008, with and was convicted in March, 2009, of aggravated assault and domestic violence by a jury. Ms. Mitchell was convicted of assault and battery. On April 17, 2009, Mr. Vaughn was sentenced to a term of incarceration in the Kent County Jail.

We also adopt the Commission's conclusion that these facts demonstrate, by a preponderance of the evidence, that respondent breached the standards of judicial conduct as set forth in the settlement agreement:

16. The conduct described above created the appearance of impropriety, which erodes public confidence in the judiciary, in violation of [the Michigan Code of Judicial Conduct], Canon 2A, and, as such, constitutes:

(a) Misconduct in office as defined by the Michigan Constitution 1963, as amended, Article VI, § 30 and MCR 9.205;

(b) Conduct clearly prejudicial to the administration of justice, as defined by the Michigan Constitution of 1963, as amended, Article VI, § 30 and MCR 9.205;

(c) A failure to establish, maintain, enforce and personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the [MCJC,] Canon 1;

(d) A failure to conduct himself at all times in a manner which would enhance the public's confidence in the integrity and impartiality of the judiciary, contrary to MCJC, Canon 2B; and

(e) Conduct that exposes the court to obloquy, contempt, censure, or reproach, contrary to MCR 9.104(A)(2).

After reviewing the recommendation of the Judicial Tenure Commission, the settlement agreement, the standards set forth in *Brown*, and the above findings of fact and conclusions of law, we accept the recommendation of the Commission and ORDER that Honorable Benjamin H. Logan, II be publicly censured. This order stands as our public censure.

MARKMAN, J. (*concurring in part and dissenting in part*).

I agree that, at a minimum, the discipline imposed by this Court's order is appropriate. But I would remand to the Judicial Tenure Commission (JTC) for further explanation to determine if significantly greater discipline is appropriate.

By letter of May 3, 2010, the Chairperson of the JTC informed this Court that the JTC had not determined whether respondent testified falsely because that count was effectively dismissed as a result of the settlement agreement, and that she could not provide this Court with any further information because this would be outside the scope of the stipulated facts provided to the JTC, citing *Dana Corp v Employment Security Com'n*, 371 Mich 107 (1963). Although *Dana* held that stipulated facts are "sacrosanct" and cannot be "alter[ed]," it further held that a court can, of course, "reject any offered stipulation as incomplete . . . ." *Id.* at 110-111. Here, the offered stipulation *is* incomplete because it does not address whether respondent testified falsely in the course of the JTC investigation, i.e., it does not address the apparent inconsistency between the stipulated fact that respondent received a phone call from a particular individual that lasted approximately 15 minutes and respondent's multiple denials of having any such conversations on the date in question. Therefore, I would direct the JTC to hold an evidentiary hearing, and take any other action it deems necessary, to answer sufficiently and completely the questions raised in this statement. That is, I would direct the JTC to determine whether respondent testified falsely to the JTC in the course of its investigation, and, if not, how respondent's 15-minute phone call can be reconciled with respondent's multiple denials of having any such conversations on the date in question.

I am also deeply troubled by the message that is being sent by the Court in this and in other recent cases of judicial misconduct. In particular, I believe that the wrong message is being communicated as to this Court's resolve in severely sanctioning false judicial statements. In *In re Servaas,* 484 Mich 634 (2009), decided last year, this Court, contrary to the recommendation of the Judicial Tenure Commission to remove the respondent judge from office for testifying falsely, imposed only a public censure. In that case, there was substantial evidence that the judge had moved outside of the district from which he was elected in direct violation of the Michigan Constitution, and then engaged in a pattern and practice of actions to conceal this misconduct, including providing false testimony under oath. Moreover, in the accompanying case of *In re Halloran, __* Mich __ (Docket No. 139830, order entered July 2, 2010), the Court imposed only a public censure and a 14-day suspension, despite the respondent judge's admission that he dismissed 30 cases in order to avoid the disclosure of the fact that he had failed to timely adjudicate those cases. In addition, the fact that, in many of these cases, the parties simply continued to litigate as if nothing happened, raises concerns about whether the respondent judge was forthright with the parties about the dismissals. As in this case, the Court was unwilling to remand to the JTC for further investigation concerning

respondent's honesty. Finally, in the instant case, the Court imposes only a public censure, despite the fact that respondent appears to have testified falsely to the JTC.

As the leadership court within our state's judiciary, we communicate in these cases either that we do not take seriously false statements made in the course of a judge's exercise of duties, or that we believe we lack the authority to require the JTC to address such matters. Either of these propositions is alarming, and very much inconsistent with the leadership traditionally exercised by this Court in preserving and maintaining a judiciary of the highest professional and ethical standards. Because I strongly disagree with each of these propositions, and because I believe this Court must exercise a more responsible stewardship of the judicial branch, I would direct the JTC to investigate the instant matter further.

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.

WEAVER, J., not participating. I abstain from voting on any items dealing with the Judicial Tenure Commission (JTC) and/or the Attorney Grievance Commission (AGC) to avoid any appearance that I could be trying to affect the outcome of the referrals of me to the JTC and AGC by Justices CORRIGAN, YOUNG and MARKMAN.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 2, 2010

_Corbin R. Davis_
Clerk

p0629