# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 1, 2011

141721 & (5)

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

GRIEVANCE ADMINISTRATOR,
　　　　　Petitioner-Appellee/
　　　　　Cross-Appellant,

v　　　　　　　　　　　　　　　　　　SC: 141721
　　　　　　　　　　　　　　　　　　ADB: 08-143-JC

MARK H. CANADY,
　　　　　Respondent-Appellant/
　　　　　Cross-Appellee.

_____/

　　　　On order of the Court, the application for leave to appeal and the application for leave to appeal as cross-appellant are considered, and they are DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

　　　　YOUNG, C.J. (*dissenting*).

　　　　I dissent from the Court's order because I believe that respondent's deceitful conduct warrants a suspension of at least 180 days—a period of suspension requiring respondent to demonstrate affirmatively that he is worthy of reinstatement to the legal profession and of the trust of both the public and the legal system.[1]

## I. FACTS AND PROCEDURAL HISTORY

　　　　Respondent pleaded guilty to misdemeanor driving while impaired[2] and was sentenced to six months probation. The terms of respondent's probation required him to spend ninety days on an alcohol monitor and to abstain from alcohol and controlled substances. The day after sentencing, respondent tested positive for alcohol. Respondent subsequently pleaded guilty to violating probation. The trial court sentenced respondent to three days in jail and ordered respondent to attend ninety Alcoholics Anonymous (AA)

_____

[1] See MCR 9.124.

[2] MCL 257.625(3).

meetings in as many days.[3] Respondent was required to provide attendance verification forms proving that he attended the requisite number of AA meetings.

Respondent submitted verification forms to the court establishing that he had fulfilled the probation requirements. However, respondent's probation officer reported to the court that respondent's AA attendance verification forms were forged because they reflected meetings at times and regarding topics that did not exist. Respondent's probation officer testified that the AA attendance forms had been forged for three months—the entirety of respondent's ninety day requirement. Additionally, respondent expressly told the trial court, untruthfully, that he attended the AA meetings listed on the verification forms. Based upon respondent's failure to comply with the terms of probation—including failure to provide valid attendance verification forms—the trial court revoked respondent's probation and sentenced respondent to fifteen days in jail.

Respondent appeared and testified at a disciplinary hearing before a hearing panel of the Attorney Discipline Board (ADB). The panel explained that respondent found attending AA meetings "hard to do" because of his "very busy schedule." Rather than attend the meetings or request a modification of probation, respondent testified that he met with individuals from AA, either in person or on the telephone, discussed AA topics, and that those individuals signed his forms. Respondent also admitted that the trial court revoked his probation, in part, because respondent forged his AA verification forms.

Based upon this evidence, the hearing panel concluded that respondent made "knowingly false statements" to the trial court regarding his attendance at AA meetings, but that the statements "were not made with the intent to deceive . . . ."[4] In light of respondent's clean disciplinary history and alcohol dependency, the ADB ordered that respondent be suspended from the practice of law for 120 days.[5]

---

[3] Respondent also entered into a contractual probation agreement with the Attorney Grievance Commission (AGC) that required respondent to comply with these terms.

[4] It is hard to parse, much less give deference to, this ADB conclusion: that the respondent's statements and documents provided to the court were "knowingly false" but not made with the "intent to deceive." The ethical standard precludes materially false statements knowingly made. Michigan Rule of Professional Conduct 3.3(a)(1). There is no question that proofs of the respondent's attendance at AA meetings ordered by the court were "material." Thus, the conclusion advanced by the ADB is of the kind that none but lawyers make and believe. Surely, this is not the standard of conduct we expect of *anyone* appearing in court, much less officers of the court.

[5] Respondent was initially suspended for sixty days by the hearing panel, but the ADB later increased the suspension to 120 days. Respondent is also required to refrain from using alcohol and other nonprescription mind or mood altering substances and to participate in various substance abuse and peer counseling programs until January 2012.

## II. ANALYSIS

All lawyers in Michigan take an oath and swear or affirm that they will "maintain the respect due to courts of justice and judicial officers." Furthermore, the Rules of Professional Conduct dictate that "[a] lawyer *shall not* knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."[6] By deliberately fabricating documents regarding his AA attendance and using the fictitious documents to mislead the court that he satisfied the terms of his probation, respondent committed a serious breach of the trust reposed in him as a member of the Michigan Bar. Moreover, respondent's deliberately dishonest statements and conduct before the trial court demonstrate a complete lack of respect for the legal process. While ordinarily, I respect the judgment of the ADB in its determination of sanctions, it is difficult to imagine conduct more damaging to the orderly administration of justice and to the judicial process than a lawyer intentionally lying and presenting manufactured evidence in a court proceeding. This, however, is precisely what respondent did by falsifying his AA attendance sheets and submitting that documentation to the trial court as fact. If we are to honor the central goal of our judicial system—determination of the truth—I do not regard respondent's *motivation* for lying and submitting false evidence to the court to be a legitimate mitigating factor.

In order to strive to determine the truth, our system of justice demands the honesty of attorneys and judges engaged in the work of the court. As officers of the court, attorneys have an absolute obligation to act with candor when making representations to a tribunal.[7] For this very reason, in a related context, I have consistently taken the position that when a judge lies under oath and thereby breaches the legal system's trust,

---

[6] Michigan Rule of Professional Conduct 3.3(a)(1) (emphasis added).

[7] The fact that respondent was appearing as a party defendant rather than a lawyer representing a client does not vitiate his ethical obligations under Michigan Rule of Professional Conduct 3.3(a)(1).

the only appropriate sanction is removal from office."[8] Similarly, when an attorney knowingly lies and presents manufactured evidence in court, the sanction should be commensurately severe. I believe that respondent's 120-day suspension is wholly inadequate because the nature of the ethical breach goes to the very core of his fitness to be an attorney. When a lawyer knowingly lies to the court, he forfeits *any* presumption that he is fit to practice law in our state. I would increase respondent's suspension to *a minimum* of 180 days, which would compel respondent to demonstrate affirmatively that he is worthy of reinstatement to the legal profession.[9]

The purpose of imposing discipline for lawyer misconduct is for the "protection [of] the public, the courts, and the legal profession."[10] We do a grave disservice to the public, the courts, and to the legal profession by allowing automatic reinstatement to attorneys who demonstrate unfitness to practice law by knowingly lying to a tribunal. In such situations, I believe it should *always* be incumbent upon the disciplined attorney to justify his readmission to the profession. Because I believe that the sanction in this case is inadequate and that the appropriate sanction should require reinstatement proceedings, I respectfully dissent.

MARKMAN, J., joins the statement of YOUNG, C.J.

---

[8] *In re Servaas*, 484 Mich 634, 716 (2009) (YOUNG, J., dissenting) (emphasis added). See also, *In re Noecker*, 472 Mich 1, 16-18 (2005) (YOUNG, J., concurring); and *In re Nettles-Nickerson*, 481 Mich 321 (2008). I also concurred in part with Justice MARKMAN's dissenting opinion in *In re Servaas*, 484 Mich 634, 655-703 (2009) (MARKMAN, J., dissenting).

In addition to cases in which a judge lies under oath, I have consistently supported appropriately exacting sanctions in instances of dishonest judicial behavior. See *In re Logan*, 486 Mich 1050, 1053-1054 (2010) (MARKMAN, J., concurring in part and dissenting in part) and *In re Halloran*, 486 Mich 1054, 1055-1057 (2010) (MARKMAN, J., concurring in part and dissenting in part). Justice MARKMAN and I were in agreement as to the results in each of these cases.

[9] See, MCR 9.123 and 9.124.

[10] MCR 9.105.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 1, 2011

_Corbin R. Davis_
Clerk

p0329