ATTORNEY GENERAL, *ex rel.* SELBY, *v.* MACDONALD.

1. CONSTITUTIONAL LAW—PUBLIC OFFICERS—TESTS—WORDS AND
   PHRASES.
   No test forbidden by section 2, Art. 16, Const. of 1909, is imposed
   by a statutory requirement that members of a municipal
   charter commission shall have a residence of three years in
   the municipality (Act No. 279, Pub. Acts 1909), such require-
   ment being merely a special qualification.

2. QUO WARRANTO—DISCRETIONARY CHARACTER OF WRIT.
   In the case of an alleged intrusion upon an office, the court
   has discretion in quo warranto to proceed to judgment or
   not, according as the public interests do or do not require it,
   and will not do so where no good end will be subserved.

Information in the nature of quo warranto by Franz C.
Kuhn, attorney general, on the relation of Guy W. Selby
and others, against Bruce J. Macdonald to determine re-
spondent's right to the office of member of the Flint char-
ter commission. Submitted February 21, 1911. (Calen-
dar No. 24,466.) Information dismissed February 24,
1911.

*Franz C. Kuhn*, Attorney General (*Homer J. Mc-
Bride*, of counsel), for relators.

*Edward Cahill* and *Brennan, Cook & Gundry*, for
respondent.

STONE, J. This proceeding in the nature of quo war-
ranto was instituted by the mayor, Guy W. Selby, and
Joshua C. Cole, George F. Caldwell, Frederick Behrendt,
Theodore S. Chaplin, George H. Gordon, Henry Mc-
Parland, George E. Norwood, William E. Sear, Frank
T. Hall, Louis P. Church, John Wildanger, Jr., and
Charles E. Wood, aldermen of the city of Flint, filing an
information for the purpose of testing the title of Bruce

J. Macdonald to the office of member of the charter commission of said city.

The question of general charter revision of the special charter of the city of Flint was submitted to the electors of said city under the provisions of Act No. 279 of the Public Acts of Michigan for 1909, being an act entitled "An act to provide for the incorporation of cities, and for changing their boundaries," April 4, 1910, at the annual municipal election, and was carried by more than a majority of the electors present and voting thereon at such election, as shown by the returns canvassed by the common council of said city. Candidates were nominated for the offices of the members of charter commission at the September primary following, held Tuesday, September 6, 1910, and elected at the general November election, held Tuesday, November 8, 1910. There were nine persons elected, one elector from each of the six wards of the city and three at large. All persons elected, previous to their election, had a residence of three years in the city. The members of the charter commission thus selected qualified and commenced the performance of their duties November 22, 1910.

There is no claim but that the provisions of Act No. 279 aforesaid have been complied with in respect to the method therein designated for the nomination and election of the members of the charter revision commission, and that said members have qualified and are performing duties thereunder.

Relators contend that the act under which the city of Flint decided to revise its charter, being Act No. 279 aforesaid, is unconstitutional and invalid for the reason that section 18 of said act, among other things, provides that to be eligible to the office of member of the charter commission an elector must have a residence of at least three years in the municipality; that such provision prevents the electorate of the city of Flint from voting for whomsoever of the qualified electors they may desire for such office, in that no person not having a residence of

three years in the city is entitled to hold the office or position under the provisions of said act; that it adds a test not contained in, and not authorized by, the Constitution of the State, on account of which the act is unconstitutional and invalid.   Section 18 of Act No. 279 is as follows:

"SEC. 18. Any city desiring to revise its charter shall do so in the following manner, unless otherwise provided by charter:   When its legislative body shall by a two-thirds vote of the members elect declare for a general revision of the charter, when an initiatory petition shall be presented therefor as provided in section twenty-five of this act, the question of having a general charter revision shall be submitted to the electors for adoption or rejection at the next municipal election, in case the electors shall, by a majority vote, declare in favor of such revision a charter commission shall be selected consisting of one elector from each ward and three electors at large, having a residence of at least three years in the municipality; no city officer or employé whether elected or appointed shall be eligible to a place upon said commission; the names of all candidates who have been duly nominated as hereinafter provided shall be placed upon a separate ballot at the election designated to be held for the election of a charter commission and without their party affiliations designated; the candidate having the greatest number of votes in each ward shall be declared elected; and the three candidates at large having the greatest number of votes cast in the city shall be declared elected; the nomination and election of the members of such commission except as herein specified, shall be conducted as near as may be as now provided by law for the nomination and election of city and ward officers in the respective cities of this State."

The part of the Constitution claimed to have been violated is section 2 of article 16, Const. of 1909, which is as follows:

"SEC. 2. Members of the legislature and all officers, executive and judicial, except such officers as may, by law, be exempted, shall, before they enter on the duties of their respective offices, take and subscribe the following oath or affirmation:

" ' I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of...... according to the best of my ability.'

" No other oath, declaration or test shall be required as a qualification for any office or public trust."

Conceding that the position of member of the charter commission created by said act is an office or public trust, we pass to consider the question: Is the provision contained in Act No. 279, requiring each elector elected to the office to have a residence in the municipality of at least three years, a "test" not authorized by the Constitution to be imposed as a qualification for any office or public trust?

Respondent and his associates have been elected, and they have qualified and are discharging the duties of their offices. It is not claimed that they do not possess the requisite qualifications for the office, or that any other persons have been elected in their stead. The claim is that a "test" has been applied in their selection, which is prohibited by the Constitution of this State, in that they are thereby required to be residents of the city for three years. In our opinion this is not a "test," as that word is used in the Constitution, but is rather a special qualification. *Attorney General* v. *Detroit Common Council*, 58 Mich. 213 (24 N. W. 887, 55 Am. Rep. 675). Special qualifications have frequently been required by statute for certain offices. Prosecuting attorneys and circuit court commissioners must be members of the bar. *People* v. *May*, 3 Mich. 598. Certain conditions may be attached to an office which are not "tests" within the meaning of the Constitution. For instance, by statute, sheriffs and county treasurers cannot hold their offices for more than two consecutive terms. Numerous statutes in this State prescribe residence in the city, township, or county as a qualification to the holding of offices in such municipalities.

These in our opinion are not " tests " within the meaning of the Constitution.

In the case of *Barker* v. *People,* 20 Johns. (N. Y.) at page 461, the court made use of the following language:

"As to the oath of office prescribed by the sixth article and the provision that no other oath, declaration, or test shall be required, it is contended that the word "test" has a most extensive meaning, and prohibits the establishing of any other rule by which the capacity of a person to hold an office shall be determined, than that defined, the oath of the person appointed or elected. I cannot accede to this. In my judgment the exclusion of any other oath, declaration, or test, as a qualification for an office or public trust, means only that no other oath of office shall be required. It was intended to abolish the oath of allegiance and abjuration or any political or religious test as a qualification. The provision that no other oath is to be required as a test imports nothing with respect to the other qualifications. In the case of a person elected a senator or a governor, the oath has no reference to the qualifications required, and they may be inquired into by some other tribunal. If an alien should be elected, he can well take the oath; but surely, the question whether he could hold the office would be open to inquiry."

This office having been created by statute, and existing under the statute, and no claim being made that the respondents do not possess sufficient qualifications, it is urged that the case might be disposed of upon the ground that the relators are not in position to raise the question. It does not appear that any citizen otherwise qualified was a candidate for commissioner and was barred from having his name on the ticket by reason of the three years' residence provision.

In the case of an alleged intrusion upon an office, the court has discretion to proceed to judgment or not, according as the public interests do or do not require it, and will not do so where no good end will be subserved by it. *Vrooman* v. *Michie,* 69 Mich. 44 (36 N. W. 749); *People* v. *Nappa,* 80 Mich. 484 (45 N. W. 355); *Lamoreaux* v. *Attorney General,* 89 Mich. 146 (50 N. W. 812).

But as we have considered this matter upon its merits, and as it is one of public interest, we will dispose of it upon its merits, and we hold that the statute in question does not impose any "other oath, declaration or test" than that prescribed by the Constitution.

The relief prayed for will therefore be denied, and the information dismissed, and without costs.

BIRD, HOOKER, MOORE, and BROOKE, JJ., concurred.