DAVIS v CHATMAN

Docket No. 299021. Submitted April 8, 2011, at Detroit. Decided May 17,
2011, at 9:15 a.m.

Robert Davis sought leave in the Wayne Circuit Court to file a
complaint for quo warranto against Clifford Chatman after he
finished in third place when vying for election to one of two
available positions on the Highland Park School District Board of
Education. Plaintiff alleged that defendant, the second-place fin-
isher, was seeking to usurp and unlawfully hold the school board
position because he had not been a resident of the school district
for 30 days before the February 9, 2010, filing deadline for the May
2010 election, as required by MCL 168.302. The court, John H.
Gillis, Jr., J., granted plaintiff's application for leave to file a
complaint for quo warranto and held an evidentiary hearing on the
complaint. At the conclusion of the evidentiary hearing, the court
concluded that defendant had not resided in the district during the
relevant period. Defendant then moved to disqualify Judge Gillis,
asserting that Judge Gillis had impermissibly gained personal
knowledge of the facts when he drove past defendant's purported
residence without prior notice to the parties. The court denied the
motion. Defendant then moved for Chief Judge Virgil Smith to
disqualify Judge Gillis, but Chief Judge Smith denied the motion.
The court entered a judgment granting a writ of quo warranto,
ordering that defendant was not entitled to hold the school board
position and that all votes cast for him were void. The judgment
declared that plaintiff, having the next highest vote total, was a
winner of one of the positions. Defendant appealed and moved for
a stay of the judgment. In an unpublished order, entered July 15,
2010 (Docket No. 299021), the Court of Appeals stayed that
portion of the judgment that recognized plaintiff as a winner of the
election and ordered that the board position remain empty while
the appeal was pending. The Supreme Court denied plaintiff's
application for leave to appeal that order. 487 Mich 859 (2010).

The Court of Appeals *held*:

1. A person may apply to the Attorney General to bring an
action for quo warranto alleging the usurpation of an office. If the
Attorney General refuses the request, the person may apply

privately to the appropriate court under MCR 3.306(B)(3)(b) for leave to file the action. Plaintiff was not required to provide notice to defendant before seeking leave to file for quo warranto. The notice to which defendant was entitled, and which he received, was service of the application after the trial court granted plaintiff permission to file the pleading. Nor was plaintiff required to attach supporting affidavits to his application given that supporting affidavits are not required by statute (MCL 600.4501) or the court rule. The trial court did not abuse its discretion when it granted plaintiff's application to proceed by quo warranto given that plaintiff had made the appropriate application to the Attorney General, who declined to pursue the matter, and that plaintiff's application disclosed sufficient facts concerning defendant's putative residence to justify further inquiry into his residency status.

2. MCR 2.513(B) permits a trial court sitting as a trier of fact to view the place where a material event occurred, but the court may not exercise that authority without prior notice to the parties. However, reversal was not warranted in this case on the basis of the trial court's viewing of defendant's purported residence because the record made clear that the viewing played no role in the trial court's ultimate decision.

3. A party has the right to demand a jury trial in a quo warranto proceeding, MCR 3.306(E), but a party may waive a jury trial demand by agreement in writing or on the record, MCR 2.509(A)(1). This may include an implied expression of agreement by the conduct of the parties. In this case, defendant's conduct implied acquiescence to a bench trial and amounted to a waiver of his jury demand given that he failed to object to the proceedings, participated in them, and specifically requested that the trial court resolve the issues at hand.

4. Under MCL 168.10, MCL 168.11, and MCL 168.302, to be eligible to seek election to the Highland Park School District Board of Education, at a minimum, defendant had to have been a resident of Highland Park, i.e., habitually sleeping and lodging there, for 30 days before the filing deadline for the election. The trial court did not clearly err by concluding that defendant had failed to meet this requirement in light of the evidence that there was no utility service at defendant's purported residence during that time frame. Other evidence also suggested the residence was vacant. Consequently, the trial court did not abuse its discretion by issuing the writ of quo warranto.

5. When a school board position becomes vacant, MCL 168.311(1) empowers the remaining school board members to appoint a replacement. However, the term of office for a school

board member elected in May does not begin until July 1. Thus, although defendant filed an acceptance of office and took the oath of office after the election, he was not a school board member when the trial court issued its judgment on June 30, 2010. Accordingly, the position did not become vacant as a result of the trial court's order voiding his election, and the board could not appoint a replacement under MCL 168.311(1). Rather, the statute governing quo warranto for usurpation of office, MCL 600.4505, provided the proper remedy empowering the trial court to determine which of the parties was entitled to hold office. Under that statute, the trial court properly decided that plaintiff was entitled to hold the office.

Affirmed.

1. QUO WARRANTO — APPLICATION FOR LEAVE TO FILE ACTION — NOTICE.

A plaintiff privately applying to a court for leave to file an action for quo warranto is not required to first give notice to the defendant; the notice to which the defendant is entitled is service of the application after the court has granted the plaintiff permission to file the pleading (MCR 3.306[B][3][b]).

2. JURY — WAIVER OF JURY DEMAND — ACTIONS FOR QUO WARRANTO.

A party has the right to demand a jury trial in a quo warranto proceeding, but may waive the demand by agreement in writing or on the record, which may include an implied expression of agreement by the conduct of the parties, such as acquiescence in a bench trial (MCR 2.509[A][1], 3.306[E]).

3. ELECTIONS — SCHOOL BOARDS — QUALIFIED ELECTORS — RESIDENCE.

To be eligible to seek election to a school board, an individual must be a qualified and registered elector of the school district by the filing deadline; to be a qualified elector, a person must possess the qualifications of an elector and must have been habitually sleeping and lodging in the city or township for 30 days (MCL 168.10, 168.11, 168.302).

4. ELECTIONS — SCHOOL BOARDS — VACANCIES — TERM OF OFFICE.

The term of office for a school board member elected in May does not begin until July 1, even if the putative election winner has filed an acceptance of office and taken the oath of office; a court order voiding the votes cast for the putative election winner before he or she has taken office does not create a vacancy on the board and the board may thus not appoint a replacement board member (MCL 168.302[b], 168.310[2][f], 168.311[1]).

*Marlinga Law Group, PLLC* (by *Carl J. Marlinga*), and *Law Offices of Culpepper Kinney* (by *Robert F. Kinney*) for plaintiff.

*Peggy K. Madden* for defendant.

Amicus Curiae:

*Marianne Talon*, Corporation Counsel, and *Janet Anderson-Davis*, Assistant Corporation Counsel, for the Wayne County Board of Canvassers.

Before: FORT HOOD, P.J., and MURRAY and GLEICHER, JJ.

MURRAY, J. Two seats were up for election in 2010 on the Highland Park School District Board of Education, one of which was held by plaintiff, Robert Davis. Plaintiff, with Debra J. Humphrey and defendant, Clifford Chatman, was one of seven candidates vying for the school board positions. When plaintiff finished in third place behind defendant, he sought and obtained a judgment granting a writ of quo warranto. As a consequence, defendant's election victory was invalidated and plaintiff was placed into office. Defendant appeals as of right both the order granting plaintiff leave to file the complaint of quo warranto and the judgment granting a writ of quo warranto. We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

On January 20, 2010, defendant signed an affidavit of identity with the Highland Park clerk in order to run for one of two school board positions in the upcoming election.[1] Both terms were to commence July 1, 2010. In accordance with election requirements, defendant

---

[1] The affidavit was filed on January 21, 2010.

claimed on the affidavit of identity that he was a lifetime resident of Wayne County and resided on January 20, 2010, at 56 Louise in Highland Park. On May 4, 2010, the school board election was held, and Humphrey and defendant won the two positions. Plaintiff finished in third place, 23 votes behind defendant (201 votes compared to 178 votes).

Plaintiff, believing that defendant did not reside at 56 Louise and therefore did not meet the residency requirements to be on the ballot for election as a school board member, took steps to initiate quo warranto proceedings against defendant and sought a temporary restraining order (TRO) to prevent defendant from tampering with his residency records. The court granted plaintiff's application for leave to file a complaint for quo warranto and held an evidentiary hearing on the application.

An evidentiary hearing was held over three days where both parties presented witnesses and submitted exhibits. The crux of the matter was whether defendant resided at 56 Louise for 30 days prior to the February 9, 2010, filing deadline. Plaintiff's proofs, which intended to show that the house was unoccupied during the relevant times, primarily involved witnesses' observations of the property, the status of the utilities for the property, and defendant's own address filings with the state.

Plaintiff's eyewitnesses who testified about the condition of the house were John Holloway, Ralph Kinney, and plaintiff himself. Holloway, a retired police chief for the city of Highland Park who lived four houses away from 56 Louise, stated that he saw snow accumulate throughout the winter and first saw signs of occupancy in April 2010. Plaintiff also traveled by the premises over a hundred times (many of which were between January 20 and February 9, 2010) and never saw any lights or other signs of occupancy. For his part, Kinney testified that over the

course of a three-week period in May, he never saw any people but did note that televisions or lights were on at nighttime and that the same two vehicles would be present in front of the house regardless of when he visited. Both plaintiff and Kinney testified that they never saw garbage taken to the curb on the neighborhood's garbage pickup day. Furthermore, plaintiff testified that, after a May 11, 2010, school board meeting, he followed defendant to a residence located at 17315 Lincoln Drive in Southfield.

Plaintiff also presented evidence that the house lacked the necessary and usual utilities that a home would need in order to be habitable. Pashko Memcevic, a DTE Energy employee, testified that the last known customer for 56 Louise was Bianca Heard and that the service was terminated on October 13, 2008. Thus, DTE was not actively supplying electricity or gas to 56 Louise.[2] Memcevic also testified that DTE's records showed no gas usage during this entire time, but Memcevic acknowledged that it was because DTE was unable to obtain any readings.

Furthermore, plaintiff presented the testimony of Khalaila Hines, an employee in the Highland Park Water Department. According to Hines, the water to 56 Louise was turned off on November 25, 2008, and her records showed no water activity any time after the shutoff. Hines indicated, however, that even though there *should* have been no water being supplied to 56 Louise, it would have been possible for water to be supplied illegally if someone had the proper tools and turned the water on at the street.

---

[2] While DTE was not actively supplying electricity, its records showed that there was some unauthorized usage. From October 14, 2009, until March 17, 2010, there were 60 kilowatt-hours consumed, with 59 of those being consumed after December 10, 2009. According to Memcevic, this was a negligible amount of electricity, only enough to only constitute three hours of usage.

Plaintiff also relied on the addresses that defendant used in some state records to show that defendant did not reside at 56 Louise. Although defendant changed his voting registration to reflect the 56 Louise address on January 20, 2010, defendant's concealed weapons permit and vehicle registration still reflected, as of the evidentiary hearing, an address of 17315 Lincoln Drive in Southfield.

Defendant, on the other hand, claimed that he, indeed, started residing at 56 Louise in late October 2009. Regarding his prior residential history, defendant testified that he had lived at 17315 Lincoln Drive in Southfield from June 2008 through November 2008, 231 Ferris in Highland Park from November 2008 through April 2009, 11745 Ten Mile Road #202 in Warren from April 2009 through October 2009, and finally at 56 Louise in Highland Park in October 2009.[3] Defendant acknowledged that there was no furnace in 56 Louise, so in order to keep warm he and his landlord/roommate, Chaka Powell,[4] used two electric space heaters. As proof of his tenancy, defendant offered into evidence a lease he signed that commenced on January 1, 2010. Defendant explained that there was no lease agreement for the first couple months that he resided on Louise because he was on "hard times."

While defendant indicated that he started living at 56 Louise in late October 2009, he was not evicted from his Warren apartment until December 28, 2009. Defendant explained that although he had already moved out two

---

[3] This sworn testimony directly conflicts with defendant's sworn statement in his affidavit of identity that he was a lifelong resident of Wayne County. Warren is in Macomb County, while Southfield is in Oakland County.

[4] Powell had purchased the home in January 2009 through a foreclosure sale from a bank.

months earlier, the Warren apartment complex had to procure this judgment in order for their records to reflect that defendant had vacated the premises.

Before the end of January 2010 or early February 2010, there was no regular mail delivery to 56 Louise. Mark Harvey, the postal carrier for that area, testified that he would hold on to mail addressed to that house because he thought the home was vacant. However, in late January or early February, Harvey was informed by his supervisor to resume delivery because the homeowner had requested it. Harvey explained that, in addition to the home looking like it was vacant, there was no mailbox present to deliver to until after the request to resume delivery occurred. Also of note, Harvey only met defendant for the first time a month before the hearing, which would correlate approximately to the first week of May 2010.

At the conclusion of the evidentiary hearing on June 9, 2010, the trial court summarized the evidence it had received and noted that "[t]he Court has driven by the house yesterday. . . . [T]he house is boarded up, it does not appear to be lived in from the outside." Ultimately, the court concluded that defendant did not reside at 56 Louise during the relevant time period:

> We know from the — both the water people, the water board, and from the DTE Energy, there's no gas, no electricity, there's no water at this house.
>
> So the Court finds that this house is not inhabitable by anyone in the world in its present condition. So this Court finds that Mr. Chatman was not a resident. He had changed his address. He used that address, but he's not inhabiting that house, and residing there within the meaning of the laws. So the Court will grant the TRO.

Nine days later, on June 18, 2010, defendant moved to disqualify the trial court on the basis that he imper-

missibly acquired personal knowledge when he drove past 56 Louise. At a hearing on June 28, 2010, the court denied the motion, stating that "[t]he fact that I drove by wasn't the basis of my decision." Afterward, defendant moved for Wayne Circuit Court Chief Judge Virgil Smith to disqualify the trial court, but Chief Judge Smith denied the motion because defendant failed to show that the trial judge exhibited any bias.

On June 30, 2010, the trial court entered a judgment granting a writ of quo warranto, ordering that defendant was not entitled to hold the school board position and that all votes cast for him were null and void. Furthermore, the judgment declared that plaintiff, having the next highest vote total, was the duly elected winner of the election. The trial court also denied defendant's request for a jury trial, concluding that a determination on the matter had already been made and, in any event, the court did not believe that defendant had a right to a jury trial for this equitable action.

Two weeks into plaintiff's new term, this court entered an order that (1) stayed that portion of the judgment recognizing plaintiff as one of the election winners and (2) ordered that the board seat was to remain empty pending the appeal. *Davis v Chatman*, unpublished order of the Court of Appeals, entered July 15, 2010 (Docket No. 299021). The Supreme Court later denied plaintiff's application for leave to appeal this order. *Davis v Chatman*, 487 Mich 859 (2010). The instant appeal ensued.

## II. ANALYSIS

### A. LEAVE TO APPLY FOR QUO WARRANTO

Defendant first argues that the trial court erred when it granted plaintiff's application for leave to proceed by quo warranto. "A court's decision whether to

grant or deny an application for leave to proceed by quo warranto is reviewed for an abuse of discretion." *Barrow v Detroit Mayor*, 290 Mich App 530, 539; 802 NW2d 658 (2010). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

"Quo warranto" is a "common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed." Black's Law Dictionary (9th ed). Quo warranto is the only appropriate remedy for determining the proper holder of a public office, see *People v Tisdale*, 1 Doug 59 (Mich, 1843), overruled in part on other grounds, *Petrie v Curtis*, 387 Mich 436, 438-441; 196 NW2d 761 (1972), and *Layle v Adjutant General*, 384 Mich 638, 641; 186 NW2d 559 (1971), including who is the proper holder of the position of school board member, *Williams v Lansing Bd of Ed*, 69 Mich App 654, 659; 245 NW2d 365 (1976). Both the statute and court rule permit a party to bring an action for quo warranto if the Attorney General declines to bring such a suit—as was the case here. MCL 600.4501; MCR 3.306; see, also, *Barrow*, 290 Mich App at 540-541.

Initially, we reject defendant's argument that plaintiff was required to provide notice before seeking leave to file for quo warranto. Neither the relevant court rule (MCR 3.306) nor the statute (MCL 600.4501) contains a notice requirement, and our Supreme Court has found that fact dispositive of this issue:

> It will be observed that the statute does not require notice. There appears to be no necessity for notice. It is the initial step in the proceeding. Its object is to obtain permission to take out a summons in *quo warranto*. Leave of the court is required by the statute to prevent an extravagant use of the writ unless there is some real basis for it. Failure to give notice to the defendant does not deprive him of any

substantial right. He has his full day in court after leave is granted and summons is served on him. To require notice results in giving the defendant two flings at his defense. If defendant be given notice of the application he will make the same showing that he afterward does on the merits. If the matter is of such a character that the circuit judge would like to hear from defendant before granting leave, he may always make an order requiring him to show cause why leave should not be granted. [*Ferzacca v Freeman*, 240 Mich 682, 684-685; 216 NW 469 (1927).]

While defendant counters that the subsequent enactment of MCR 3.306 abrogated *Ferzacca*, conspicuously absent from that court rule is any mention of notice. Thus, the rationale of *Ferzacca* is still controlling. The notice to which defendant was entitled—and did receive—was service of the application after the court granted plaintiff permission to file the pleading.

Alternatively, defendant urges this Court to find the order granting leave to file for quo warranto deficient on public policy grounds since the application was "unverified" and did not contain supporting affidavits. We decline this invitation, however, since once again neither the relevant statute nor court rule imposes such requirements. If these or other requirements are to be placed into the rules, it would be either by legislation or through the Supreme Court's rulemaking authority. See *People v Jackson*, 487 Mich 783, 797 n 31; 790 NW2d 340 (2010). It would not be through this Court's decision-making.

In any event, this Court has previously stated that the most important considerations in granting leave to file quo warranto are (1) whether an appropriate application was made to the Attorney General and (2) whether the application disclosed sufficient apparent merit to justify further inquiry by quo warranto proceedings. *Grand Rapids v Harper*, 32 Mich App 324, 329; 188 NW2d 668 (1971). It is undisputed that plaintiff made the appropri-

ate application to the Attorney General, who in turn declined to pursue the matter, MCR 3.306(B)(3)(b), which granted plaintiff the ability to file this action. See also MCL 600.4501. Additionally, plaintiff's application disclosed sufficient facts concerning defendant's putative residence justifying further inquiry into defendant's residency status. Accordingly, the trial court's granting leave to file the application was well within the range of principled and reasonable outcomes and so cannot be overturned on appeal.

### B. THE COURT'S VIEWING THE PREMISES

Defendant next argues a new hearing is in order because the trial court viewed the premises at 56 Louise without notice to any party. Although our review of a trial court's decision to view a scene is for an abuse of discretion, *Gorelick v Dep't of State Hwys*, 127 Mich App 324, 335; 339 NW2d 635 (1983), defendant did not raise this issue until subsequently requesting the trial court's disqualification. Mindful that review of this unpreserved issue may nonetheless be appropriate in the interests of justice, *Travis v Preston (On Rehearing)*, 249 Mich App 338, 348; 643 NW2d 235 (2002), we conclude that reversal is not warranted since it is abundantly clear that the court's viewing of the premises played no role in its decision. MCR 1.105.

MCR 2.513(B) specifically allows for a trial court sitting as a trier of fact to "view property or a place where a material event occurred."[5] According to current caselaw, however, this authority may not be exercised without prior notice to the parties and may constitute an abuse of discretion if the court relies on its own

---

[5] Defendant cites *Valentine v Malone*, 269 Mich 619; 257 NW 900 (1934), and *People v Eglar*, 19 Mich App 563; 173 NW2d 5 (1969), but both predate the current rule, MCR 2.513(B).

observations (done without notice to the parties) in rendering its decision. See *Travis*, 249 Mich App at 349. In this case, although it is undisputed that the trial court failed to provide notice of its visit, the court was crystal clear in explaining that its observations had no effect on its decision. And the facts found by the trial court were based on an abundance of evidence that was independent of the drive-by view of the house. For starters, a number of witnesses testified that the home was at least partially boarded-up, a fact confirmed by photographs. In addition, our review of the record reveals that the court based its decision in large part on the home's lack of utilities. Finally, although not dispositive, we note that defendant did not dispute the trial court's observations that the home was boarded-up and from the outside appeared vacant. Consequently, the court had abundant evidentiary support for its decision, and its viewing of the residence did not affect defendant's substantial rights. MCR 1.105.

Before moving on, we note that defendant failed to submit an affidavit as required by MCR 2.003(D) when requesting the court's disqualification under MCR 2.003(C)(1)(c).[6] Thus, he has waived the issue of disqualification. See *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 22-23; 436 NW2d 70 (1989) (the failure to follow the proper procedure in requesting disqualification constitutes a waiver). Even were we to consider this argument as unpreserved, however, reversal would not be appropriate since—as previously noted—the record reveals no prejudice from the court driving by the premises. See *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

---

[6] MCR 2.003(C)(1)(c) requires disqualification of a judge where the judge "has personal knowledge of disputed evidentiary facts concerning the proceeding."

## C. REQUEST FOR JURY TRIAL

We likewise find meritless defendant's argument that the trial court erred in denying his request for a jury trial. As this claim involves the interpretation and application of a court rule, our review of this issue is de novo. *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002). We construe court rules using the same legal principles governing statutory interpretation, the cardinal rule of which requires enforcement of the meaning expressed in the court rule where its plain language is clear and unambiguous. *Id.* at 553-554.

While a trial court may hear a quo warranto proceeding or permit the matter to proceed to a jury trial, a party has the right to demand a jury trial of this issue. MCR 2.508(B)(1); MCR 3.306(E); see, also, *St Joseph Twp v City of St Joseph*, 373 Mich 1, 5-6; 127 NW2d 858 (1964). The right to a jury trial in a civil action is permissive and not absolute. Const 1963, art 1, § 14; *Marshall Lasser, PC v George*, 252 Mich App 104, 107-108; 651 NW2d 158 (2002). Further, a party may waive a jury trial demand by agreement "in writing or on the record . . . ." MCR 2.509(A)(1).[7] Here, it is undisputed that the parties did not enter into a written agreement to waive the jury demand. However, defendant fully participated in the proceedings at which no jury was present, which is noteworthy since this Court has construed the "on the record" language of MCR 2.509(A)(1) to "encompass[] an expression of agreement implied by the conduct of the parties." *Marshall Lasser*, 252 Mich App at 107. To determine whether the conduct of the parties justifies

---

[7] Plaintiff claims that defendant waived his right to a jury trial by failing to pay the appropriate fee at the time the demand was filed, as required by MCR 2.508(B)(1). Although the register of actions does not reflect the payment of a fee, we conclude that this matter was otherwise waived for the reasons stated in this opinion.

the inference of a waiver, we look to the totality of the circumstances. *Id.* at 108.

Instructive to our inquiry is *Marshall Lasser*. There, this Court rejected the plaintiff's argument that the trial court erred in proceeding with a bench trial on the issue of damages in the absence of an express withdrawal of the jury demand. *Id.* at 106. Noting that the parties' conduct at five evidentiary hearings on this issue was active and vigorous, we explained that the plaintiff's argument ran contrary to its behavior during the proceedings below:

> Both parties were given notice that the court would be deciding the damage issue. The defendant and the plaintiff's representative were present and both were represented by counsel. There is no indication in the record that plaintiff or defendant ever objected to the bench trial, nor is there any indication that either party proceeded under protest. Under the circumstances of this case, we believe both parties' acquiescence to the bench trial evidenced an agreement to waive the secured right. [*Id.* at 109.]

Similar to the plaintiff in *Marshall Lasser*, we conclude that defendant's conduct clearly implied acquiescence to a bench trial and amounted to a waiver of defendant's jury demand.[8] The following colloquy on the first day of the hearing is illustrative of this conclusion:

> *The Court*: You're asking for a TRO –
>
>                     *   *   *
>
> [*Plaintiff's Counsel*]: Actually, what I would like to do, yes, your Honor, but I'd also like to preserve some evidence today so that we don't have to call these witnesses forward

---

[8] Like *Marshall Lasser*, the fact that this matter proceeded under the label of "evidentiary hearing" is of no moment as we are not bound by labels; to hold otherwise would elevate form over substance. See *Lockwood v Revenue Comm'r*, 357 Mich 517, 558; 98 NW2d 753 (1959).

again on the basic factual issue [of] whether or not [defendant] was an actual resident of the city of Highland Park prior to the election.

We really have no alternative but to ask this Court for a ruling on this, because just relying upon the city clerk or the Secretary of State would not be fruitful, we need the equitable jurisdiction of this Court to actually grant the writ of quo [warranto].

I would ask that the Court either grant the writ today or at least preserve the testimony on the factual issue so that we would be in a position to then ask the Court to grant the writ at a later time.

*The Court*: What witnesses do you have here today?

*[Plaintiff's Counsel]*: We have six witnesses, people who lived in the neighborhood, and also we have officials from the city of Highland Park as to just the basic things as to whether water or electric is being supplied to the premises; the clerk from the city of Southfield to show the voting records there. All of these witnesses are rather quick, but it's necessary to preserve this testimony.

*The Court*: Okay.

Any comment?

* * *

*[Defense Counsel]*: My submission to the Court, and I hope that [plaintiff's counsel] is in agreement, I think he is, is that basically, Judge, the issues in this case are pretty simple.

The allegation that is raised by the Plaintiff is that the Defendant did not reside in the city of Highland Park and that he filed a false affidavit.

We have four witnesses to testify. I think that we'll adequately show that he did reside consistent with the law, and *I would ask the Court to try to resolve this matter today so we can go forward.*

I think [plaintiff's counsel] is in agreement. I didn't receive a copy of the complaint, but apparently the com-

plaint was filed, *but there will be no additional issues in my mind and I believe in [plaintiff's counsel's] that would be presented to the Court that will be presented today* [sic].

*We'll fully present our issues to the Court, and I believe [plaintiff's counsel] will as well. So we're prepared to go forward and we'd ask the Court to hear testimony and at that time I would ask the Court to dismiss the petition.* [Emphasis added.]

Thereafter, the parties participated in a three-day hearing in which both presented evidence, and plaintiff continued to make clear that he was seeking not only a TRO, but also a writ of quo warranto. At no time did defendant object that the matter was proceeding without a jury. On the contrary, defendant requested that the court resolve the matter and dismiss the petition. Thus, we conclude that defendant's failure to object to the evidentiary hearing combined with his voluntary participation in the procedure, during which he requested that the court resolve the issues at hand, amounted to a waiver of his demand for a jury trial.

### D. JUDGMENT GRANTING WRIT OF QUO WARRANTO

This brings us to defendant's argument that the trial court erred when it granted a writ of quo warranto. We review for an abuse of discretion a trial court's decision in a quo warranto proceeding. *Attorney General ex rel Selby v Macdonald*, 164 Mich 590, 594; 129 NW 1056 (1911); see also *Voorhies v Walker*, 227 Mich 291, 294; 198 NW 994 (1924). But a trial court's findings of fact will not be disturbed unless they are clearly erroneous. *Christiansen v Gerrish Twp*, 239 Mich App 380, 387; 608 NW2d 83 (2000). Clear error exists if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made. *Johnson v Johnson*, 276 Mich App 1, 10-11; 739 NW2d 877 (2007) (opinion by FORT HOOD, J.).

As noted earlier in this opinion, actions for quo warranto inquire into the authority by which a public office is held. *Barrow*, 290 Mich App at 540. If such actions are brought against a person for usurpation of office, then the trial court's judgment may determine the right of the defendant to hold the office. MCL 600.4505.

The office in question is a position on the Highland Park School District Board of Education. MCL 168.302, part of the Revised School Code, provides the requirements to run for a position on a school board: "An individual is eligible for election as a school board member if the individual is a citizen of the United States and is a qualified and registered elector of the school district the individual seeks to represent by the filing deadline." MCL 168.10 defines "qualified elector" as "a person who possesses the qualifications of an elector . . . and who has resided in the city or township 30 days." "Residence" is defined by MCL 168.11 as the "place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging." Thus, in order to be eligible to seek election for the Highland Park School District Board of Education, at a minimum, defendant had to have been habitually sleeping and lodging in Highland Park as of January 10, 2010, i.e., 30 days before the February 9, 2010, filing deadline.

After reviewing the evidence, the trial court explained the basis for its finding that defendant failed to satisfy the residency requirement:

> We had testimony from the third witness, Mr. Pashko Memsevic [sic] from DTE Energy. He said that there hasn't been any official service to that address since October of 2008. That means the house didn't have any gas, didn't have any electricity, which is necessary to make the house

inhabitable. He said there's — when I questioned, there's about one day of unauthorized usage.

And we had the testimony from Mrs. Hines, from the City of Highland Park Water Department. There's — there hasn't been any water service since November 2008.

\* \* \*

In order to be a resident, you have to actually live in the city, sleep there, et cetera. We know from the — both the water people, the water board, and from the DTE Energy, there's no gas, no electricity, there's no water at this house.

Considering the trial court's superior ability to judge credibility, we cannot conclude that the court erred in holding that defendant had failed to satisfy the statutory residency requirements in light of the evidence. MCR 2.613(C); *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004).

Although defendant claims he satisfied the residency requirements based on his testimony and that of his witnesses, the testimony of his witnesses was inconsistent on the question of when he began residing at 56 Louise. For example, one neighbor claimed, consistently with the testimony of the owner of the residence, that defendant moved in sometime in October 2009. Another neighbor testified, however, that she did not see defendant moving furniture into the home until almost two months later. Similarly, a postal carrier indicated that he withheld mail addressed to defendant because the residence appeared vacant and was without a mailbox until late January or early February 2010, when mail service was requested.

Besides the inconsistent testimony on the issue of when defendant began his residency, conflicting evidence was also presented on the home's utility usage during the period in question. Specifically, while defen-

dant and the owner of the premises asserted their use of electric space heaters during this time frame, utility company representatives testified that the residence had been without electricity, water, and gas since October 2008.[9] Utility records for this period indicated a negligible amount of electricity usage. And, the photographs admitted into evidence revealed 56 Louise to be, at best, a partially boarded-up house that according to other evidence had little, if any, foot traffic during the relevant period. Even reviewing the "cold record" from the evidentiary hearing, we can conclude that there was significant evidence pointing to the conclusion that defendant did not reside at 56 Louise on or before January 10, 2010. As a result of this evidence, we can unequivocally hold that the trial court's findings of fact on this point were not clearly erroneous, and we are not in the position to second-guess what evidence or witnesses were more credible. Consequently, the trial court did not abuse its discretion in issuing the writ of quo warranto.

E. JUDGMENT NAMING PLAINTIFF THE ELECTION WINNER

Finally, we arrive at the most difficult question raised in this case—whether the trial court erred by declaring plaintiff a duly elected member of the school board. This issue involves a question of statutory interpretation, which we review de novo. *Univ of Mich Regents v Titan Ins Co*, 487 Mich 289, 297; 791 NW2d 897 (2010).

Defendant and the amicus curiae, the Wayne County Board of Canvassers, argue that the remaining members of the Highland Park School District Board of Education should appoint a replacement. It is generally

---

[9] Powell, the owner of the house, testified that he did not illegally divert any utilities into 56 Louise.

true that when a school board member's seat becomes vacant, MCL 168.311(1) empowers the remaining school board members to fill the vacant office by appointment. Specifically, that section provides: "If less than a majority of the offices of school board member of a school district become vacant, the remaining school board members shall fill each vacant office by appointment." MCL 168.311(1). A vacancy triggering the procedure in MCL 168.311(1) occurs when, *inter alia*, a court declares a school board member's election or appointment void. MCL 168.310(2)(f). Relying on these provisions, defendant claims that the trial court lacked authority to declare plaintiff the election winner when defendant had already filed his acceptance and taken his oath of office on May 10, 2010—nearly two months before the court entered its judgment.

This is a sound argument, but is complicated by MCL 168.302(b), which expressly provides that the term of office for a school board member elected in May (as defendant was here) does not begin until July 1 immediately following the election. Thus, notwithstanding defendant's acceptance of office and taking the oath, defendant did not assume office prior to the trial court's order of June 30, 2010. Defendant was therefore not a "school board member" when his election was held void. Buttressing this conclusion is the fact that MCL 168.310(1) requires the administration of the oath of office *before* the member-elect enters upon the duties of office.[10] See, also, *Davis v Wheeler*, 483 Mich 949, 950; 766 NW2d 808 (2009) (YOUNG, J., concurring). Also

---

[10] In its amicus curiae brief, the Wayne County Board of Canvassers asserts that because defendant filed an acceptance of the office to which he was elected in accordance with MCL 168.309, he was a member of the board upon the administration of his oath. That section, however, refers to a "member-elect" and fails in any way to contradict the instruction in MCL 168.302(b) about when the term of office begins.

noteworthy is that the trial court's judgment at no point created a vacancy since it declared plaintiff the election winner *before* the term of office commenced.[11] And even though this Court stayed the trial court's judgment, *Davis v Chatman*, unpublished order of the Court of Appeals, entered July 15, 2010 (Docket No. 299021), such an action does not fall under any of the enumerated contingencies that qualify as creating a vacancy under MCL 168.310(2)(a) through (i). Consequently, since defendant was not a member of the school board at the time of the court's order, MCL 168.311(1) by its very terms could not supply the Highland Park School District Board of Education with the authority to fill the position created by the writ of quo warranto.

Instead, governing the case are the remedy provisions of the quo warranto statute, MCL 600.4505. Specifically, MCL 600.4505 provides:

> (1) In actions brought against persons for usurpation of office, the judgment may determine the right of the defendant to hold the office. If a party plaintiff alleges that he is entitled to the office, *the court may decide which of the parties is entitled to hold the office.*
>
> (2) If judgment is rendered in favor of a party who is averred to be entitled to the office, he is entitled, after taking the oath of office, and executing any official bond which is required by law, to take the office. [Emphasis added.]

Notably, the fact that a person has yet to assume office is not a bar to this statute's application. *In re Servaas*, 484 Mich 634, 643 n 15; 774 NW2d 46 (2009) (opinion by WEAVER, J.) (rejecting the notion that a quo warranto

---

[11] Contrary to the Wayne County Board of Canvassers' argument, *Attorney General ex rel Cook v Burhans*, 304 Mich 108; 7 NW2d 370 (1942), and *Gallagher v Keefe*, 232 Mich App 363; 591 NW2d 297 (1998), are inapposite as both vacancies occurred *after* the officeholder had "acted as such," *Cook*, 304 Mich at 110, or had actually "held office," *Gallagher*, 232 Mich App at 371.

action "may only be brought for 'claims that an officer is *currently* exercising an invalid title to office' ") (citation omitted).

The action brought and decided in this case is precisely the scenario MCL 600.4505(1) contemplates.[12] Plaintiff alleged that defendant was not entitled to office, and the court determined that defendant had failed to satisfy the residency requirements, thereby rendering his election void. Since plaintiff was the runner-up to defendant in the election, the court properly decided that plaintiff was entitled to hold office. The judgment granting the writ of quo warranto complied with the applicable law.

### III. CONCLUSION

For the foregoing reasons, we hold that the trial court properly granted plaintiff's petition for leave to file for quo warranto and likewise did not err in granting a writ of quo warranto, determining defendant's election void and finding plaintiff entitled to the office of Highland Park school board member.

Affirmed.

No costs, a public question having been involved. MCR 7.219.

FORT HOOD, P.J., and GLEICHER, J., concurred with MURRAY, J.

---

[12] Even if the provisions of MCL 168.311 applied to this case and were in conflict with MCL 600.4505, the latter section would control because it is the more specific statute addressing the circuit court's remedial power in a quo warranto case. *Driver v Naini*, 287 Mich App 339, 351-352; 788 NW2d 848 (2010).