*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH QUINLAN,

                Plaintiff-Appellee,

v

DEREK PAUL GENDRON, also known as DEREK PAUL,

                Defendant-Appellant.

UNPUBLISHED
October 26, 2023

No. 363579
Ottawa Circuit Court
LC No. 21-006582-CZ

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Defendant appeals as of right an order granting plaintiff's motion to confirm an arbitration award and enter judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an agreement for the sale of an online pet store. In February 2020, plaintiff entered into a Website Services and Domain Transfer Agreement with Semper Fi Services, Inc.—a Wyoming corporation for which defendant is the sole shareholder, officer, and agent. This agreement, which governed the sale, contained the following arbitration clause:

> Any dispute, claim, proceeding, or other action among the parties shall be heard by the American Arbitration Association and conducted according to the American Arbitration Association Commercial Arbitration Rules. The parties agree to service of notices and actions under those rules via email delivery with postal service supplement as required by such rules.

The agreement also contained a governing law, jurisdiction, and venue clause, which stated:

> This agreement is governed by and enforced according to State of Michigan laws. Any dispute arising must be brought in any court having jurisdiction in Ottawa County, Michigan. The parties consent to such venue and waive objection to such venue.

-1-

In August 2020, plaintiff obtained an arbitration award for $7,800 against "Derek Paul" and Semper Fi Services. Plaintiff then filed a complaint against "Derek Paul Gendron, a/k/a Derek Paul," in August 2021, to enforce the arbitration award. Defendant moved for summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) and MCR 2.116(C)(8) (failure to state a claim on which relief can be granted), arguing (1) he was not a named party in the agreement, nor was he a named party in the arbitration, because it was against "Derek Paul," and he was "Derek Gendron;" (2) even if the arbitration did use his proper name, the arbitrator lacked jurisdiction over defendant; and (3) the trial court lacked personal jurisdiction because defendant lived in Tennessee, plaintiff lived in Colorado, none of the transactions occurred in Michigan, and the only connection to Ottawa County was the dispute resolution clause in the agreement, which defendant did not sign in his individual capacity. The trial court denied defendant's motion, finding there was "no genuine issue of material fact that 'Derek Paul' is one and the same person as 'Derek Paul Gendron' and 'DP Gendron,' and [found defendant] to be one and the same person under the misnomer doctrine." The trial court also found that it had personal jurisdiction over defendant, because defendant had sufficient contacts with Michigan regardless of his current Tennessee residence. The trial court ultimately granted plaintiff's subsequent motion to confirm the arbitration award, and defendant now appeals.

## II. ANALYSIS

## A. JURISDICTION

Defendant argues the trial court lacked personal jurisdiction over him. We disagree.[1]

"When examining whether a Michigan court may exercise limited personal jurisdiction over a defendant, this Court employs a two-step analysis." *Yoost v Caspari*, 295 Mich App 209, 222; 813 NW2d 783 (2012). "First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment." *Id.* "Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident." *Id.* "Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution." *Id.* at 222-223. We use a three-part test to determine whether the exercise of limited personal jurisdiction over an individual comports with due process:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities

---

[1] We review de novo the legal question whether a trial court possesses personal jurisdiction over a party. *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012). Furthermore, we review de novo "the legal question of whether the exercise of personal jurisdiction over a nonresident . . . is consistent with the notions of fair play and substantial justice required by the Due Process Clause of the Fourteenth Amendment." *Id.*

in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Id.* at 223, quoting *Mozdy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992).]

"Whether jurisdiction is proper under the minimum contacts test does not depend on the weight of the factors individually. Rather, the primary focus when analyzing personal jurisdiction should be on reasonableness and fairness." *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 433; 633 NW2d 408 (2001). This analysis is performed on a case-by-case basis. *Id.*

As noted, the first part of our analysis depends on whether jurisdiction over defendant was authorized by Michigan's long-arm statute. Michigan's long-arm statute for limited personal jurisdiction over individuals, MCL 600.705, states:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody. [*Id.*]

The trial court relied on numerous different interactions and relationships defendant had with the state when it determined it had personal jurisdiction over him. These factors included: (1) that defendant "presented plaintiff with a contract by the company that he controlled stating that Ottawa County, Michigan would be the venue for any contract dispute[;]" (2) that plaintiff was the sole officer and agent of another company, which had "filed no less than forty different lawsuits in the courts of Ottawa County, Michigan in the four years preceding the present action[;]"

(3) that defendant informed the American Arbitration Association via e-mail he was in Michigan due to the COVID-19 quarantine in August 2020; (4) that this e-mail also identified a Michigan attorney with an office in Ottawa County as the corporate attorney for Semper Fi Services, Inc.; and (5) that defendant was identified in the annual report of his other company as a Michigan resident "at least as of June 23, 2019."

Defendant contends he was not a party to the agreement and is therefore not bound by its terms. However, Semper Fi Services, Inc., was a party to the agreement, and is a corporation for which defendant is the sole shareholder, officer, and agent. It was in this capacity that defendant conducted business in Michigan. MCL 600.705(1). This, considered with the factors provided by the trial court, particularly the fact that the agreement specifically designated Ottawa County, Michigan, as the proper venue for disputes, is sufficient evidence of defendant's connections with the state, justifying the trial court's exercise of personal jurisdiction over him.

Moving to the second prong, we consider the three-part test in determining whether the trial court's exercise of personal jurisdiction comported with due process. First, the evidence presented demonstrates defendant "purposely availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws[,]" *Oberlies*, 246 Mich App at 433, by including the venue clause in the agreement he signed in his professional capacity as the sole owner of Semper Fi Services, Inc. Second, this cause of action arose from defendant's activities in the state—an arbitration award stemming from the agreement, which, as discussed, identified Ottawa County, Michigan, as the sole venue for dispute resolution. Third, as noted earlier, defendant had various activities which were "substantially connected with Michigan[.]" *Id.* Defendant's numerous contacts with the state, coupled with the very specific language of the agreement that disputes were to be governed by Michigan law and settled in Ottawa County, Michigan, demonstrate the trial court's exercise of personal jurisdiction over defendant did not violate his due-process rights. Indeed, the governing law clause specifically notes: "The parties consent to such venue and waive objection to such venue."

## B. ARBITRATION AWARD

Defendant next argues the trial court erred by confirming the arbitration award and denying defendant's motion for reconsideration. We disagree.[2]

On appeal, defendant contends the trial court erred by confirming the arbitration award because he was "never made a party to the original agreement, was never notified and did not participate in arbitration, was not named in the arbitration award, and could not legally become a party to the case." These arguments lack merit.

First, regarding defendant's argument he was not a party to the agreement, the trial court, in its opinion and order confirming the arbitration award, reasoned:

---

[2] "We review de novo a trial court's decision to enforce, vacate, or modify a statutory arbitration award." *Tokar v Albery*, 258 Mich App 350, 352; 671 NW2d 139 (2003).

Defendant continues to assert that he is not personally subject to an arbitration award as he never agreed to arbitrate. The UAA [Uniform Arbitration Act, MCL 691.1681 *et seq.*,] provides that the court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate. MCL 691.1686(2). Michigan law respects the separate existences of corporate entities—and limited-liability companies—even when one entity owns another, or when a single individual owns an entire entity. *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 650; 364 NW2d 670 (1984) ("We recognize the general principle that in Michigan separate entities will be respected."); *Rymal v Baergen*, 262 Mich App 274, 293; 686 NW2d 241 (2004) ("The law treats a corporation as an entirely separate entity from its shareholders, even where one individual owns all the corporation's stock.").

Defendant, however, signed the agreement in this case personally, without disclosing his agency status. In *Altobelli v Hartman*, 499 Mich 284; 884 NW2d 537 (2016), the Michigan Supreme Court quoted with approval the following principle:

> "It is well established that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation." *Id.*, [sic] at 301 n 9.

The court therefore concluded:

> ". . . because plaintiff's claims challenge defendants' actions taken in their capacity as agents of the Firm, plaintiff's dispute falls within the scope of this particular arbitration clause and must therefore be resolved in arbitration. Since this dispute must be resolved in arbitration, whether these defendants can be held personally liable for the challenged actions is a substantive matter reserved for the arbitrator. . . ." *Id.* [(citation omitted, second ellipses added).]

As recognized by the trial court, defendant was not exempt from the terms of the arbitration agreement when the entire basis for plaintiff's claim was the alleged fraud committed by defendant on behalf of Semper Fi Services, Inc. Plaintiff sought to pierce the corporate veil in his complaint for this very reason.

Regarding defendant's contention that he was not notified about, nor was he part of, the arbitration proceedings, MCL 691.1682 states:

> (1) Except as otherwise provided in this act, a person gives notice to another person by taking action that is reasonably necessary to inform the other person in ordinary course, whether or not the other person acquires knowledge of the notice.

> (2) A person has notice if the person has knowledge of the notice or has received notice.

(3) A person receives notice when it comes to the person's attention or the notice is delivered at the person's place of residence or place of business, or at another location held out by the person as a place of delivery of such communications. [*Id.*]

We first note that defendant does not address the trial court's ruling on whether he was given adequate notice. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhov v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015). However, even if defendant did properly dispute the ruling, plaintiff provided sufficient notice under the statute, because, while the e-mail address on the demand for arbitration was incorrect, the mailing address used was the address specified as the one to use for defendant in the agreement. Thus, plaintiff took action that was "reasonably necessary to inform" defendant of the proceedings at a "location held out by [defendant] as a place of delivery of such communications." MCL 691.1682(1) and (3).

Defendant's final argument is that he was not named in the arbitration award, and, therefore, could not be a legal party in this case. Again, we disagree. In denying defendant's motion for summary disposition, the trial court found "no genuine issue of material fact that 'Derek Paul' is one and the same person as 'Derek Paul Gendron,' and [found] him to be one and the same person under the misnomer doctrine," citing *Miller v Chapman Contracting*, 477 Mich 102, 106-107; 730 NW2d 462 (2007). "As a general rule, . . . a misnomer of a plaintiff or defendant is amendable unless the amendment is such as to effect an entire change of parties." *Id.* at 106 (quotation marks and citation omitted, ellipses in original). "The misnomer doctrine applies only to correct inconsequential deficiencies or technicalities in the naming of parties, for example, [w]here the right corporation has been sued by the wrong name, and service has been made upon the right party, although by a wrong name . . . ." *Id.* at 106-107 (quotation marks and citations omitted, ellipses and alteration in original). Defendant does not dispute that he is the person with whom plaintiff contracted, and, as such, the misnomer was amendable, because it did not "effect an entire change of parties." *Id.* at 106.

## C. TRIAL COURT BIAS

Defendant lastly argues the trial court judge was prejudiced against him, and incapable of impartially handling this case. We disagree.[3]

Generally, a party must pursue a claim of disqualification before the trial court—including requesting referral to the chief judge if the motion is denied—to preserve the issue for appeal. See *Sinicropi v Mazurek*, 273 Mich App 149, 176 n 15; 729 NW2d 256 (2006). The issue may be waived by the party's failure to file an affidavit with the motion to disqualify. *Davis v Chatman*, 292 Mich App 603, 615; 808 NW2d 555 (2011). While parties acting *in propria persona* are

---

[3] "In reviewing a motion to disqualify a judge, this Court reviews the trial court's findings of fact for an abuse of discretion and reviews the court's application of those facts to the relevant law de novo." *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). An abuse of discretion occurs when a decision is outside the range of reasonable and principled outcomes. *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009).

entitled to some lenity in their pleadings, they are still required to provide adequate support for their claims. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976). In this case, defendant raised the disqualification issue when seeking reconsideration, but failed to request a referral to the chief judge after the motion was denied. Nor did he attach an affidavit to his motion. See *Davis*, 292 Mich App at 615. However, we choose to address this issue regardless of any potential waiver because of the greater lenity afforded to parties acting *in propria persona*.

"Due process requires that an unbiased and impartial decision-maker hear and decide a case. A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012) (citation omitted). MCR 2.003(C) provides, in relevant part:

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556 US 868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [MCR 2.003(C)(1)(a) and (b) (alteration in original).]

Defendant argues the trial court judge "allowed his personal opinion of [defendant] and his friendship with [p]laintiff's counsel to unduly influence his judicial decision making." In support of this argument, defendant argues the trial court judge denied or ignored every motion he filed. However, merely ruling against a litigant is not a sufficient basis to warrant disqualification:

> Generally, a trial judge is not disqualified absent a showing of actual bias or prejudice. The mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment. Judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality. [*In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009) (quotation marks and citations omitted).]

In further support of his bias allegation, defendant argues he has "personal knowledge" of a "friendly relationship" between the trial court judge and plaintiff's counsel, contending they "may have engaged in ex parte communications concerning [defendant's] pending federal case against [plaintiff's counsel] and the [p]laintiff's law firm." Defendant further contends he has personal knowledge the trial court judge "does not like" him, and "has by his courtroom demeanor expressed animus towards [defendant] and has clearly acted to show favoritism to his friend, [plaintiff's counsel]."

However, defendant has provided no evidence to support these allegations outside his "personal knowledge," and "[a] party cannot simply assert an error or announce a position and

then leave it to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitchell*, 296 Mich App at 524 (quotation marks and citation omitted). As noted, while parties acting *in propria persona* are entitled to a certain degree of lenity, they are still required to provide adequate support for their claims. *Estelle*, 429 US at 106-108. Defendant has failed to do so. Considering the record as it stands, there is insufficient evidence of judicial bias.

## III. CONCLUSION

Affirmed. As the prevailing party, appellee may tax costs as provided by MCR 7.219.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates